**MARZO CLUB, LLC, Enero Lakes, LLC, Febrero Land, LLC, and 2006 Brazoria Venture, LLC, Appellants,**

v.

**COLUMBIA LAKES HOMEOWNERS ASSOCIATION, Appellee.**

No. 14–09–00099–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 19, 2010.

Mark H. Neal, Angleton, Raymond L. Gregory II, Houston, for appellants.

Joseph Patterson, Angleton, for Appellee.

Panel consists of Justices FROST, BOYCE, and SULLIVAN.

## OPINION

KEM THOMPSON FROST, Justice.

This appeal arises from a declaratory judgment action in which the plaintiff, a homeowners association, sought a judicial determination and declaration of its rights, power, and authority regarding its role as a developer of a subdivision and its ability to amend the deed restrictions for the entire development. The defendants, who had purchased for development several parcels identified on the plats of the subdivision, sought summary judgment against the homeowners association on several grounds. In response, the homeowners association filed a competing motion for summary judgment, seeking a declaration that all those with "developer" rights must consent to any proposed deed restrictions. The trial court granted the homeowners association's summary-judgment motion, denied the developers' motion, and ren-

dered a final judgment. We reverse and remand.

## I. Factual and Procedural Background

In 1972, Tenneco Realty Development Company ("Tenneco Realty") began development of the Columbia Lakes Subdivision (the "Subdivision"). For each of the Subdivision's five sections, a separate plat was prepared and filed in the real property records of Brazoria County, Texas ("Real Property Records"). According to the restrictions filed for each section (the "Original Restrictions"), Tenneco Realty desired "to create and carry out a uniform plan and scheme for the improvement, development and sale of certain property in Columbia Lakes." In the Original Restrictions, Tenneco Realty stated that, to accomplish this end, it established and promulgated the restrictions and covenants contained in the Original Restrictions upon "those properties located in Columbia Lakes which are herein defined as the 'Subdivision.'" Under the terms of the Original Restrictions, "all reserves . . . shown on the recorded plat(s) of the Subdivision are hereby designated to be unrestricted areas and to be used for any purpose designated by the Developer."[1] "Developer," in turn, is defined as

> Tenneco Realty . . ., *its successors and assigns, including such persons, partnerships or corporations which in agreement with Tenneco Realty . . ., are substituted for Tenneco Realty . . . under this instrument.* Such substitution may relate to all or any part of this instrument and shall become effective by the execution and recording of an appropriate amendment to this instrument.

(emphasis added). Though the Developer did not impose restrictions on the reserves under the Original Restrictions, the Developer reserved the right to impose such restrictions in the future. In 1988, CLT Properties, Inc. ("CLT Properties")[2] assumed the role of Developer of the Subdivision.

### Conveyances of Tracts Marked as Reserves

In August 2005, CLT Properties conveyed to Columbia Lakes, LLC ("Columbia Lakes") various lots in the Subdivision as well as two tracts of land located in areas identified as reserves on a plat of one of the sections of the Subdivision ("a Columbia Lakes Plat"). CLT Properties also executed and filed in the Real Property Records an "Amendment to Restrictions and Partial Transfer and Assignment of Rights and Functions of the Developer of Columbia Lakes Subdivision" ("Partial Transfer"). In the Partial Transfer, CLT Properties assigned all "its right, title, interest, equity and estate as Developer *with respect to certain real estate within Columbia Lakes Subdivision listed in Exhibit A attached hereto (the 'Property')* unto Columbia Lakes, LLC . . . ." (emphasis added). Exhibit A identifies the real property CLT Properties conveyed to Columbia Lakes. Columbia Lakes accepted assignment of CLT Properties's rights and interest regarding the Architectural Control Commit tee and Columbia Lakes Maintenance Fund Committee, and Columbia Lakes agreed to perform the functions and obligations relating to these committees. CLT Properties reserved for itself

---

1. Separate deed restrictions were filed for each section of the Subdivision, but all contain substantially similar language.

2. CLT Properties, Inc. voluntarily converted to a limited partnership known as CLT Properties, Ltd. during the series of events surrounding this case. This change is of no consequence to this proceeding, and we refer to both entities as "CLT Properties."

and its successors "all the right title, interest, equity and estate as Developer in the [Original] Restrictions with respect to remainder of all property now or hereafter owned by CLT Properties, Inc. in Columbia Lakes Subdivision." Columbia Lakes thereafter assigned its right, title, and interest in its role as Developer of the Subdivision to Columbia Lakes Homeowners Association (the "Association").

In January 2006, CLT Properties conveyed to appellant Febrero Land, LLC ("Febrero") two tracts of land located on a Columbia Lakes Plat. Later that year, in September 2006, CLT Properties conveyed to appellant 2006 Brazoria Venture LLC ("Brazoria Venture") two tracts of land located on a Columbia Lakes Plat as well as an easement. In these two conveyances, CLT Properties did not state that it was conveying any developer rights.

In September 2006, CLT Properties conveyed to appellant Marzo Club, LLC ("Marzo") various tracts of land located on a Columbia Lakes Plat, including land located in areas identified as reserves on a Columbia Lakes Plat. In addition, CLT Properties executed and filed in the Real Property Records, an instrument in which CLT Properties assigned to Marzo "all of [CLT Properties's] right, title, interest, equity and estate as Developer in the [Original Restriction as amended] with respect to the [property conveyed to Marzo] unto [Marzo]." In this instrument, the parties noted that this assignment and the rights of Marzo under the assignment are "expressly subject to any Amendments to Restrictions and Partial Transfer and Assignment of Rights and Functions of the Developer of Columbia Lakes Subdivision" made before or contemporaneously with them.

Similarly, in September 2006, CLT Properties conveyed to appellant Enero Lakes, LLC ("Enero") two tracts of land located on a Columbia Lakes Plat, including land located in areas identified as reserves on a Columbia Lakes Plat. In addition, CLT Properties executed and filed in the Real Property Records, an instrument in which CLT Properties assigned to Enero "all of [CLT Properties's] right, title, interest, equity and estate as Developer in the [Original Restrictions as amended] with respect to the [ property conveyed to Enero] unto [Enero]." In this instrument, the parties noted that this assignment and the rights of Enero under the assignment are "expressly subject to any Amendments to Restrictions and Partial Transfer and Assignment of Rights and Functions of the Developer of Columbia Lakes Subdivision" made before or contemporaneously with them.

It is undisputed that none of the conveyances to Febrero, Brazoria Venture, Marzo, or Enero included any property conveyed to Columbia Lakes by CLT Properties.

### Purported Amendments to Subdivision Restrictions

In February 2008, the Association, purportedly acting under its authority as a Developer of the Subdivision, adopted and filed in the Real Property Records purported amendments to the Subdivision Restrictions (the "Purported Amendments"), which included the following new definitions and other restrictions that are pertinent to the case under review:

"*Reserves or Reserve Area(s)*—All areas of real property shown on the recorded plat(s) of the Subdivision which are designated as a "reserve" area on said plat, or otherwise, at any time, heretofore designated as an 'unrestricted area.'

. . .

"For the purposes of this instrument, the word "Lot" shall also be deemed to also include [ ] any portion of any re-

serve shown on the recorded plat(s) of the Subdivision or any area identified by this instrument or such plat(s) as an unrestricted area [ ], whether by platting, subdivision, or by adoption of a condominium scheme of development, same being set aside for individual and private use and occupancy according to the recorded plat(s) of the Subdivision, or any recorded plat evidencing the subdivision of any *Reserves or Reserve Area(s)* into individual lots, or the functional equivalent of individual lots."

. . .

All *Reserves or Reserve Area(s)* are hereby designated restricted use areas, with the use thereof being restricted that [sic] those uses which are currently in active operation on the affected portion of the Reserve on the date of recording of this Amendment to the Restrictions of Columbia Lakes Subdivision, in the [Real Property Records]. Any change in the use of, or alteration(s) of the exterior elevations of any existing improvements physically situated on said Reserve, or any portion thereof, shall require prior written approval by [the Association], in its capacity as a Developer within the Subdivision, acting either by and through its Board of Directors, or its Architectural Control Commit tee duly appointed by its Board of Directors.

### Declaratory Judgment Action

The Association then filed a declaratory judgment action against Febrero, Enero, Marzo, and Brazoria Venture (collectively, "Developers"). In its petition, the Association alleged that the Developers were developing their property, platting acreage into additional residential lots in the Subdivision, and developing commercial ventures. According to the Association, the Developers declined to engage in discus-

sions with the Association regarding any contributions to the Maintenance Fund for the Subdivision. The Association further alleged:

[The Association], recognizing its obligations to the Subdivision at large, by virtue of its responsibility for not only the collection and expenditure of the Maintenance Fund, but also its responsibilities for exercising architectural control authority under the terms of the Restrictions, has determined that it is appropriate for (i) areas within the Subdivision parcels heretofore characterized as unrestricted "reserves", upon their development for sale, improvement and use as residential lots, to bear their fair share of covering the expenses associated with the Subdivision which are covered by the Maintenance Fund, and (ii) for a certain level or control to be exercised over the architectural aspects of proposed new development within the Subdivision on lands previously unrestricted as to their use.

The Association sought a judicial determination and declaration of its rights, power, and authority under the recorded documents regarding its role as a Developer of the Subdivision. The Association also sought a specific declaration that the Purported Amendments are "valid and subsisting." The Developers answered separately, each filing both general and specific denials, and each seeking a declaration that the Purported Amendments are invalid and unenforceable.

### Cross–Motions for Summary Judgment

The Developers moved for summary judgment on traditional and no-evidence grounds. They asserted the following grounds:

1. The parcels purchased by Brazoria Venture and Febrero are not within the boundaries of the Subdivision.

Although part of the property purchased by these entities is located within a large area labeled "Reserve" on Section 4 of the Subdivision, this large "reserve" area is not included in the acreage described as Section 4 of the Subdivision, so it is not included in the Subdivision.

2. The parcels purchased by the Developers were sold to them as unrestricted property without the Purported Amendments, which were adopted in 2008.

3. CLT Properties excluded from its transfer to Columbia Lakes the properties and developers' rights that were purchased by Marzo and Enero. Thus "developer rights" within the Subdivision are partitioned and limited by the specific parcels to which they relate within the Subdivision.

4. Marzo and Enero, as Developers, did not consent to the Purported Amendments.

5. Marzo and Enero, as Developers, were entitled to exempt any lots in the Subdivision from a maintenance charge.

In their summary-judgment motion, the Developers requested the trial court to declare that the Purported Amendments are "invalid and of no force or effect."

The Association then filed its own summary-judgment motion and a response to the Developers' motion, which may be summarized as follows:

1. Even though the affidavit of the Developers' surveyor, Raymond Williams, stated that none of the parcels conveyed to Febrero or Brazoria Venture were within the boundaries of the Subdivision, the Original Restrictions expressed that the reserves were part of the Subdivision, as were other unrestricted parcels of land, located throughout the overall Subdivision, because Tenneco Realty stated in those restrictions that "it is the intention of the Developer to include all of the premises, except as herein expressly excluded, in said plat...." According to the Association, these "reserves" were subject to the provisions of the Original Restrictions permitting the "Developer" or one with "developer rights" to later impose restrictions.

2. The Association admitted that the Developers' contention that the property sold to them was unrestricted at the time they purchased their property is "factually correct," but contended that because their purchases were made from property identified as "reserves," they purchased their property aware that, under the Original Restrictions, a "Developer" could later impose restrictions on the designated reserve areas in the Subdivision.

3. The Association responded to the Developers' position that developer rights were "partitioned and limited" to the parcels of land purchased by asserting that this argument is contrary to the Original Restrictions and Tenneco Realty's intention to develop all the land on the several plats in a "single development." The Association admitted, however, that the "current situation presented involves there being several entities which are vested with 'developer rights' within [the Subdivision]."

4. Responding to the Developers' fourth ground for summary judgment, the Association argued that the Original Restrictions effectively require *all* parties with "developer rights" within the Subdivision to

consent to the imposition of any restrictions on areas that were originally unrestricted "reserve" areas on the plats of the Subdivision.

5. Finally, in response to Enero and Marzo's argument that they, as Developers, have the authority to exempt any Subdivision lots from the maintenance fee, the Association pointed out that the Original Restrictions defined "Lots" to explicitly include any portions of the reserves shown on the recorded plats of the Subdivision.

Building on its response in number 4, above, the Association, in its summary-judgment motion, recognized that the Developers, by taking the position set forth in their motion, had not consented to the adoption of the Purported Amendments. Thus, the Association did not request a declaration that the Purported Amendments were valid. Instead, the Association stated as follows:

[E]ven if the [Purported Amendments are] invalid for lack of assent thereto by other entities with "developer rights", this Court should determine that—under the applicable provisions of the Original Restrictions—all parties who have been assigned "developer rights" in connection with the title to lands identified on the plats of the subdivision as "reserves"—including the [Association]—must consent to the adoption of any restrictions proposed for adoption as to any parcel identified as a "reserve" on the plats of the Subdivision.

The Association requested a declaration to that effect.

### Trial Court's Declaration

After considering the summary-judgment motions, responses, and summary-judgment evidence, the trial court rendered a final judgment, making the following declaration:

1. any entity or person which is assigned, or holds record title to, "developer rights" or the status of "Developer" in Columbia Lakes Subdivision must consent to the adoption of restrictions or restrictive covenants proposed to be imposed upon any parcel of land identified as a "reserve" on any of the recorded plats of Columbia Lakes Subdivision in order for such restrictions or restrictive covenants to be legally effective, and

2. that area of land labeled "reserve" on the plat of Columbia Lakes Subdivision, Section 4, the boundaries of which are as follows:

a. on the south, by the northerly line of Freeman Boulevard;

b. [o]n the east, by the northerly line of Freeman Boulevard and the west line of County Road 25;

c. on the north, by the southerly line of Olympia Drive and Block 37, Columbia Lakes, Section 4; and

d. on the west, by the easterly line of Olympia Drive and Block 45, Columbia Lakes Subdivision, Section 4,

is a "Reserve" parcel for the purposes of this declaration of the respective right[s] of the parties hereto.

The Developers now challenge on appeal the trial court's declaratory judgment.

### II. STANDARD OF REVIEW

■■■ Declaratory judgments decided by summary judgment are reviewed under the same standards of review that govern summary judgments generally. TEX. CIV. PRAC. & REM.CODE § 37.010 (Vernon 2008); *Lidawi v. Progressive County Mut. Ins. Co.*, 112 S.W.3d 725, 730 (Tex.App.-Houston [14th Dist.] 2003, no pet.). In our de

novo review of a trial court's summary judgment, we consider all the evidence in the light most favorable to the nonmovant, crediting evidence favorable to the non-movant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex.2006). When, as in this case, the grounds upon which the trial court relied are not specified in the order granting summary judgment, we must affirm the summary judgment if any of the independent summary-judgment grounds is meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex.2000).

 In this case, the trial court was asked to render a declaratory judgment based on various instruments recorded in the Real Property Records. These instruments are subject to the general rules of contract construction. *See Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex.1998). In construing contracts, our primary objective is to ascertain and give effect to the intentions of the parties as expressed in the contract. *Kelley–Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex.1998). To ascertain the parties' true intentions, we examine the entire agreement in an effort to harmonize and give effect to all provisions of the contract so that none will be rendered meaningless. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex.1999). Whether a contract is ambiguous is a question of law for the court. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex.1996). A contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation. *Id.* However, when a written contract is worded so that it can be given a certain or definite legal meaning or interpretation, it is unambiguous, and the court construes it as a matter of law. *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex.2003).

## III. ISSUES AND ANALYSIS

### A. Is the trial court's judgment supported by the pleadings?

 In their first issue, the Developers contend that the trial court erred in granting summary judgment because the trial court's judgment was not supported by the pleadings. The Developers point out that the Association did not specifically request in its petition that the trial court make the declaration contained in its judgment. Nonetheless, in its petition the Association requested a judicial determination and declaration of the Association's rights, power, and authority under the recorded documents regarding its role as a Developer of the Subdivision. Because no special exceptions have been asserted against the petition, this court must construe that pleading liberally in the Association's favor to include all claims that reasonably may be inferred from the language used therein. *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex.2000). Though the Association did not specifically request the declaration made by the trial court, its general request was sufficient to constitute a request for the relief granted in the trial court's judgment.[3] Accordingly, we overrule the Developers' first issue.

---

**3.** Though the Developers noted in the trial court that the Association had effectively conceded that the Purported Amendments were not valid as to the Developers' properties, the Developers did not object to an alleged lack of pleadings when the Association sought the relief in question in its summary-judgment motion. Even if the Association had failed to seek the relief in question in its petition, we would conclude that this issue was tried by consent. *See Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 494–95 (Tex.1991) (ap-

## B. Did the trial court err in granting the Association's summary-judgment motion because the Association acquired only partial developer rights?

In their third issue, the Developers assert that the trial court erred in declaring that all Developers or those with "developer rights" must consent to the adoption of any restrictions to be imposed on any parcel of land identified as a "reserve" on a Columbia Lakes Plat for such restriction to be legally effective. The Developers assert that the trial court erred because the Association acquired only partial developer rights.

As stated in the Original Restrictions, the "Developer" reserves the right to impose new restrictions "as to all or any portion of the reserves of the Subdivision identified on the aforesaid plat(s)." In addition, no amendment to the Original Restrictions relating to these reserves is effective unless the "Developer" consents. The Association has argued that, under the foregoing language from the Original Restrictions, Marzo, Enero, and the Association all must consent before any new restrictions are placed on these reserves, given that Marzo, Enero, and the Association are all "Developers." But, in the Original Restrictions, it is expressly contemplated that "Developer" may include several entities that by agreement with Tenneco Realty are substituted in as "Developer" under the Original Restrictions. Under the unambiguous language of the Partial Transfer, CLT Properties (Tenneco Realty's assignee) agreed with Columbia Lakes that Columbia Lakes would receive the right to be substituted in as Developer under the Original Restrictions ("Developer Rights"), but only as to the property

conveyed to Columbia Lakes by CLT Properties (collectively, the "Columbia Lakes Properties"). CLT Properties expressly reserved all Developer Rights regarding property not conveyed by CLT Properties to Columbia Lakes. As the assignee of Columbia Lakes's Developer Rights, the Association has no greater Developer Rights than its assignor, Columbia Lakes. *See Adams v. Petrade Int'l,* 754 S.W.2d 696, 720–21 (Tex.App.-Houston [1st Dist.] 1988, writ denied). Therefore, as a matter of law, the Association has Developer Rights only as to the Columbia Lakes Properties.

Under the unambiguous language of the relevant instrument, CLT Properties (Tenneco Realty's assignee) agreed with Marzo that Marzo would receive the Developer Rights as to the property conveyed to Marzo by CLT Properties (collectively, the "Marzo Properties"). Therefore, as a matter of law, Marzo has Developer Rights only as to the Marzo Properties. Similarly, under the unambiguous language of the relevant instrument, CLT Properties (Tenneco Realty's assignee) agreed with Enero that Enero would receive the Developer Rights as to the property conveyed to Enero by CLT Properties (collectively, the "Enero Properties"). Therefore, as a matter of law, Enero has Developer Rights only as to the Enero Properties.

It would be unreasonable and contrary to the unambiguous language of the relevant instruments to construe all parties with Developer Rights as being the "Developer" as to all reserves. Instead, as a matter of law, (1) the Association is the sole "Developer" as to the Columbia Lakes Properties; (2) Marzo is the sole "Developer" as to the Marzo Properties; and (3)

plying in summary-judgment context the rule that a party who allows an issue to be tried by consent and fails to raise the lack of pleading

before submission of the case cannot raise the pleading deficiency for the first time on appeal).

Enero is the sole "Developer" as to the Enero Properties.

The Association asserts that, in the instruments by which Marzo and Enero received their respective Developer Rights, the parties expressly stated that the assignment of Developer Rights therein was subject to the Partial Transfer, in which the Association's assignor received Developer Rights as to the Columbia Lakes Properties, as well as the rights and duties regarding the Architectural Control Committee and Columbia Lakes Maintenance Fund Committee. But, the respective Developer Rights of Marzo and Enero are not made subordinate to or coterminous with the Association's Developer Rights because these subsequent instruments are subject to the Partial Transfer. The assignors in the subsequent instruments do not purport to assign any Developer Rights that were transferred in the Partial Transfer, and the fact that these assignments are subject to the Partial Transfer does not support the declaratory relief granted by the trial court.

The Association also relies upon Tenneco Realty's statement in the Original Restrictions that Tenneco Realty desired "to create and carry out a uniform plan and scheme for the improvement, development and sale of certain property in Columbia Lakes." Though Tenneco Realty did state this desire in 1972, it chose the Original Restrictions as the means by which to pursue and effect this desire. As discussed above, the Original Restrictions allow for partial transfers of Developer Rights as to different properties. Presuming that CLT Properties's assignment of Developer Rights to more than one entity may thwart Tenneco Realty's stated desire for a uniform plan and scheme, CLT Properties had the right to do so under the unambiguous language of the Original Restrictions. We must give effect to this clear language, and we cannot alter the unambiguous provisions of the Original Restrictions based on a general statement of intent. See Ayres Welding Co. v. Conoco, Inc., 243 S.W.3d 177, 181 (Tex.App.-Houston [14th Dist.] 2007, pet. denied). Though the Association argues that the trial court's construction of the instruments is sensible and fair, we are guided by a legal standard that requires us to determine whether this construction gives effect to the unambiguous language of these instruments. See Helmerich & Payne Int'l Drilling Co. v. Swift Energy Co., 180 S.W.3d 635, 646 (Tex.App.-Houston [14th Dist.] 2005, no pet.). Concluding that it does not, we hold that the trial court erred in rendering the declaratory relief contained in its summary judgment.[4] Accordingly, we sustain the Developers' third issue. Having sustained this issue, we need not reach the Developers' second, fourth, fifth, or sixth issues.

## C. Did the trial court err in denying the Developers' motion for summary judgment?

In their seventh issue, the Developers assert the trial court should have granted summary judgment in their favor. In their brief argument under this issue, the Developers assert that, for the reasons stated earlier in their appellate brief, there is no genuine fact issue, and they are entitled to summary judgment as to five items that they raised in the trial court and on appeal. But these five items are

4. In the second item in its judgment, the trial court simply states that certain property is included in the term "Reserve" parcel for the purposes of the declaration in the first item. In the second item, the trial court did not declare that the property described therein was part of the Subdivision. Therefore, the second item is not a separate declaration and must be reversed along with the declaration in the first item.

summary-judgment grounds; the Developers did not ask the trial court to make a declaration as to any of these five grounds. In their motion, the Developers asked the trial court to render judgment that the Association take nothing by its declaratory judgment action other than a declaration that the Purported Amendments are "invalid and of no force or effect." The Developers have presented no appellate argument in support of the proposition that they were entitled to this relief as a matter of law. Nor have the Developers presented argument that the summary-judgment evidence proved as a matter of law that (1) the Association was not entitled to any of the relief requested in its petition, which contained a request that the trial court make a judicial determination and declaration of the Association's rights, power, and authority under the recorded documents regarding its role as a Developer of the Subdivision; or (2) the Purported Amendments are "invalid and of no force or effect," which would mean that the Purported Amendments are not effective as to the reserve areas contained in the Columbia Lakes Properties. We conclude that the argument under the seventh issue does not show the Developers' entitlement to the summary-judgment relief requested in their motion. Accordingly, we overrule the seventh issue.

## IV. CONCLUSION

The trial court's judgment is supported by the pleadings. But the trial court's only declaration is contrary to the unambiguous language of the relevant instruments. The Developers have not presented argument that they were entitled to the relief requested in their summary-judgment motion; therefore, they have not shown that the trial court erred in denying this motion. Though the trial court erred in rendering judgment, the Association and the Developers each have a request for declaratory relief pending that has not been resolved by this appeal. Accordingly, we reverse the trial court's judgment, and we remand for further proceedings consistent with this opinion, including but not limited to, consideration by the trial court of the remaining requests for declaratory relief and the parties' requests for attorney's fees under section 37.009 of the Texas Civil Practice and Remedies Code.