**Affirmed in Part, Reversed in Part, Remanded, and Memorandum Opinion filed November 19, 2013.**



In The

# Fourteenth Court of Appeals

### NO. 14-12-01053-CV

### RUSSELL EVANS AND TERRIE EVANS, Appellants

### V.

### CASEY DAVIS AND HAPPY HIDE-A-WAY CIVIC CLUB, INC., Appellees

**On Appeal from the 151st District Court
Harris County, Texas
Trial Court Cause No. 2011-38387**

## M E M O R A N D U M   O P I N I O N

When appellants Russell and Terrie Evans allegedly failed to comply with deed restrictions, the property owner's association for their subdivision, appellee Happy Hide-A-Way Civic Club, Inc. (the Club), demolished their house and two outbuildings on their property. The trial court held that the Club was authorized to destroy the structures and granted summary judgment against the Evanses' claim to recover their value. It also granted summary judgment awarding the Club statutory

fines and damages for the cost of the demolition—a total of $83,800.

The Evanses raise three issues on appeal, but we focus on two of them.[1]  In their first issue, the Evanses contend that the trial court erred by granting summary judgment based upon the Club's alleged authorization to destroy the structures because the Club failed to establish as a matter of law that it had such authority. Because we agree that the deed restrictions, bylaws, and statutes upon which the Club relies did not authorize demolition of the structures, we sustain the Evanses' first issue.

In their third issue, the Evanses argue that the trial court should not have granted summary judgment awarding the Club damages.  We agree because the summary judgment evidence does not conclusively establish that the Club notified the Evanses of its intent to sue for fees and costs as required by statute.  Because we sustain these two issues, we reverse in part and remand for further proceedings.

## BACKGROUND

As far as the record reveals, the problems began in April 2010, when the Club first cited the Evanses for various violations of deed restrictions.  The Club sent the Evanses a letter alleging that their property was "being used or maintained as dumping ground," that various vehicles—some broken down—were "improperly stored" on it, and that the weeds and grass were not "maintained in a

---

[1] In their second issue, the Evanses argue that the trial court erred by dismissing appellee Casey Davis.  The trial court dismissed Davis after sustaining various special exceptions and ordering the Evanses to "more specifically describe and clarify the aspects of their pleadings." Although the Evanses filed another petition, the trial court concluded that they "refused to amend and cure their defective pleading" and dismissed Davis as a result.  On appeal, the Evanses do not address the basis for Davis's dismissal and do not argue that their amended pleading corrected the flaws that led the trial court to dismiss Davis.  They simply contend, without citation to authority, that Davis should not have been dismissed.  Because the Evanses' appellate brief fails to attack the grounds for Davis's dismissal, we overrule the Evanses' second issue. *See* Tex. R. App. P. 38.1(i).  The trial court's order dismissing the Evanses' claims against Davis with prejudice is affirmed.

2

sanitary, healthful and attractive manner." In an affidavit, Terrie Evans testified that "[a]s soon as [the Evanses] got the [letter], [they] started cleaning up the debris and hauled off the vehicles."[2] She averred that "[a]fter [the Evanses] had cleaned up the property," she contacted the Club and an official told her that "the premises looked good and . . . [the Club] was satisfied."[3]

An affidavit from one of the Club's officials tells a different story. The official testified that conditions at the property violated deed restrictions "at all times relevant to this lawsuit."[4] In any event, neither party disputes that after the Evanses either cured these initial violations (according to them) or did not do so (according to the Club), the Evanses moved off of the property in September 2010.

The Evanses then "sold the house on a contract" or "leased [it] with option to purchase" to someone named Vicki. The record does not reflect the exact arrangement between the Evanses and Vicki, but there is no evidence that Vicki ever took title to the property. There is evidence, however, that Vicki "wanted to remodel the house and . . . tor[e] out much of the interior." As a result, according to Russell Evans, "a lot of the boards and materials" in the house were gone and "[t]he premises w[ere] trashy."

It is unclear when Vicki started to remodel, but undisputed that she never finished. At some point, Vicki "quit paying[,] and [the Evanses] never heard from her again." The Evanses also never moved back to the subdivision. Eventually,

---

[2] Terrie Evans testified that removal of the vehicles in April 2010 took "a week or so." On appeal, the Club argues that Evans's affidavit "was made in bad faith" because a picture taken "over one year later" depicts a "broken down, abandoned vehicle . . . on the premises." But the presence of a vehicle in May 2011 does not conclusively establish that the Evanses failed to remove broken down vehicles that were on the property in April 2010.

[3] The Club contends that Terrie Evans's affidavit was inadmissible. Because our analysis does not rely upon the affidavit, we need not address its admissibility.

[4] The Evanses have never objected to any of the Club's summary judgment evidence.

3

according to one subdivision resident, "the structures [on Evanses' property were] stripped of all wiring, breakers, plumbing and well pump equipment." The resident attributed some of the missing components to "thefts . . . after the Evans[es] had abandon[ed] the property." An official of the Club accused the Evanses of "allow[ing] the house to deteriorate to such an unsanitary and unsafe condition that it was unlivable."

The Evanses allege that, as their house deteriorated, they "were not aware there was a problem." According to Terrie Evans, the couple only became aware of the "problem" around March 2011, when they received a notice to abate from a Harris County public health official. Along with this abatement notice, the official "gave [the Evanses] a letter from [the Club] dated March 18, 2011." The letter stated that the property was "being used or maintained as a dumping ground for rubbish, trash, garbage or other wastes" and that it was not "maintained in a sanitary, healthful and attractive manner." According to a board member for the Club, Terrie Evans contacted the Club to discuss the new violations on March 22, 2011.

Terrie Evans testified that "immediately" after receiving the Club's letter, she and Russell "began a clean-up campaign," which consisted of ordering a dumpster and loading it with debris. After the March notice, the Club and the Evanses remained in regular contact regarding the clean up. On May 20, 2011, the Club allegedly sent the Evanses a letter stating that structures on the property would be demolished the week of June 6 and the Evanses would be billed for the cost for the demolition. Neither this letter nor the two previously sent to the Evanses mentioned the $200-per-day statutory fine that the Club would later sue the Evanses to collect. Nor did any of the letters notify the couple of its right to a hearing before the board for the Club. In any event, the Evanses contend that the

4

May letter was sent to the wrong address, so they never received it.

Around June 16, 2011, the Club had the house and two outbuildings demolished. The Evanses sued the Club, primarily seeking "damages for the loss of their home." The Club counter-sued for, among other things, the costs of demolition and clean up and a $200 statutory fine for each day that the Evanses were in violation of the deed restrictions. The Club argued that the period of violation began thirty days after it sent the first notice in April 2010 and continued until the day it demolished the structures in June 2011. At $200 a day, the total fine was $80,600. The demolition and clean up cost $3,200.

The Club moved for traditional summary judgment, arguing that it had authority to demolish the structures and was entitled to relief on its affirmative claims as a matter of law. The Club also sought attorneys' fees and discovery sanctions. The Evanses responded with a cross-motion for partial summary judgment addressing the Club's affirmative claims for costs and fines. The trial court granted the Club's motion in part, signing a final summary judgment that dismissed the Evanses' claims with prejudice and awarded the Club the damages it sought but not fees or sanctions.

The Evanses appealed. They argue that the trial court erred in granting summary judgment in the Club's favor, but they do not challenge the denial of their partial cross-motion for summary judgment.

## ANALYSIS

The central issues presented for our review are (1) whether the Club established its authority to demolish the structures on the Evanses' property as a matter of law and (2) whether the trial court erred by granting the Club summary

5

judgment on its claims for statutory fines and damages.[5] We address each issue in turn.

## I. Standard of review

We review a trial court's order granting traditional summary judgment de novo. *Olmstead v. Napoli*, 383 S.W.3d 650, 652 (Tex. App.—Houston [14th Dist.] 2012, no pet.). To be entitled to summary judgment, the movant must demonstrate that no genuine issues of material fact exist and that he is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). If the movant does so, the burden shifts to the non-movant to produce evidence sufficient to raise a fact issue. *Olmstead*, 383 S.W.3d at 652. When reviewing a summary judgment motion, we cannot read between the lines or infer from the pleadings or evidence any grounds for summary judgment other than those expressly set forth before the trial court. *Id*. When, as here, the trial court's order granting summary judgment does not specify the grounds relied on for the ruling, the summary judgment will be affirmed if any of the theories advanced are meritorious. *Id.*

## II. The summary judgment evidence does not conclusively establish that the Club had authority to demolish the structures.

The Club contends that its bylaws, deed restrictions, and certain statutes authorized it to demolish the structures.[6] To construe corporate bylaws, we apply

---

[5] The Evanses do not argue that the Club exercised its discretionary authority in an arbitrary or capricious manner, *see* Tex. Prop. Code Ann. § 202.004(a) (West 2007), but only that the Club failed to establish as a matter of law that it was authorized to destroy the structures. We limit our analysis accordingly.

[6] The Club also points out that the Evanses violated Chapter 343 of the Texas Health and Safety Code. That chapter allows a county to abate certain nuisances after following certain procedures. *See* Tex. Health & Safety Code Ann. § 343.021 (West 2010) ("the *county* may abate a nuisance under this chapter" (emphasis added)). But the Club has not cited, nor have we found, any provision authorizing non-governmental actors to abate violations summarily. Thus, to the extent the Club contends Chapter 343 authorized its demolition of the structures, we disagree.

the same rules that govern the interpretation of contracts. *In re Aguilar*, 344 S.W.3d 41, 49 (Tex. App.—El Paso 2011, no pet.) (citing cases). We do the same when interpreting instruments recorded in the real property records, like the deed restrictions upon which the Club relies. *Marzo Club, LLC v. Columbia Lakes Homeowners Ass'n*, 325 S.W.3d 791, 798 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *see also Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998) ("[R]estrictive covenants are subject to the general rules of contract construction.").

Thus, when construing the deed restrictions and bylaws at issue here, our primary objective is to ascertain and give effect to the intentions of the parties as expressed in the instruments. *Marzo Club, LLC*, 325 S.W.3d at 798. If the instruments are worded so that they can be given a certain or definite legal meaning or interpretation, they are unambiguous, and we construe them as a matter of law. *Id.* Whether an instrument is ambiguous is likewise a question of law for the court. *Id.* Ambiguity exists when the instrument's meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation. *Id.* If an instrument is ambiguous, its construction is a question of fact that may not be resolved on summary judgment. *Criswell v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 950 (Tex. 1990).

We construe statutory language to ascertain and effectuate legislative intent. *Dunham Eng'g, Inc. v. Sherwin-Williams Co.*, 404 S.W.3d 785, 789 (Tex. App.—Houston [14th Dist.] 2013, no pet.). We look to the statute's plain meaning because we presume that the Legislature intends the plain meaning of its words. *Id.* We view statutory terms in context, giving them full effect. *Id.* We presume that every word of a statute was used for a purpose, and every omitted word was purposefully not chosen. *Id.* Finally, in determining the plain meaning of a

7

statute, we read the words in context and construe the language according to the rules of grammar and common usage. *Id.*

In this case, even if we assume that the Evanses violated certain deed restrictions, none of the provisions upon which the Club relies permitted it to demolish the structures without incurring liability to the Evanses.

## A. The Club's bylaws did not authorize it to demolish the structures without incurring liability.

The Club first argues that it is not liable for destroying the structures because the action fell within the corporate purposes for which the Club was organized, as stated in the Club's bylaws.[7] The Club cites a portion of its bylaws stating that it is organized "exclusively for charitable, educational, and community improvement purposes" and that

> [o]ther purposes of the corporation are:
>> To enforce the deed restrictions pertaining to Happy Hide-A-Way Subdivision . . . [; and]
>>
>> To encourage all efforts and activities in connection with improving the community and maintaining the property values of Happy Hide-A-Way Subdivision by better upkeep and beautification of properties[.]

But the fact that the Club was organized to execute certain general purposes does not immunize the Club if it commits a tort in the process. As a result, even assuming the Club's board complied with its bylaws when demolishing the Evanses' property, this fact alone would not protect the Club from liability.

---

[7] Generally, bylaws are "'the rules and regulations or private laws enacted by the corporation to regulate, govern and control its own actions, affairs and concerns and its shareholders or members and its directors and officers with relation to each other and among themselves in their relation to the corporation.'" *GM Oil Props., Inc. v. Wade*, No. 01-08-00757-CV, 2012 WL 246041, at *8 n.10 (Tex. App.—Houston [1st Dist.] Jan. 26, 2012, no pet.) (mem. op.) (quoting 8 WILLIAM MEADE FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 4166).

8

Nothing in the bylaws suggests otherwise. Indeed, unlike one of the deed restrictions cited by the Club and discussed below, the bylaws contain no language authorizing the Club to effectuate these purposes "without liability." As a result, the trial court erred to the extent it concluded these bylaws entitled the Club to summary judgment.

> **B.    The deed restrictions upon which the Club relies did not authorize it to demolish the structures.**

As an initial matter, the Club contends that the Evanses violated multiple deed restrictions, but it cites only one provision in the restrictions that contains language authorizing unilateral abatement of these violations. This provision appears in paragraph fourteen and provides as follows:

> No tract shall be used or maintained as a dumping ground for rubbish, trash, garbage or other wastes. Garbage and waste shall not be kept except temporarily in sanitary containers. All incinerators or other equipment for the storage or disposal of such materials shall be kept in a clean and sanitary condition.
>
> The owners of all tracts shall, at all times, keep all weeds and grass thereon cut in a sanitary, healthful and attractive manner and shall in no event use any tract for storage of material and equipment except for normal residential requirements. *In the event of default on the part of the owner or occupant of any tract in observing the above requirements or any of them, Grantor may without liability to the owner or occupant for trespassing or otherwise, enter upon said tract and cut or cause to be cut, such weeds and grass and remove or cause to be removed, such garbage, trash, rubbish and so on, so as to place said tract in a neat, attractive, healthful and sanitary condition* and the occupant or owner of such tract, shall owe for the cost of such work. The owner or occupant, as the case may be, agrees by the purchase or occupation of any tract to pay such costs immediately upon notice.

(Emphasis added.)

This paragraph's plain language allows the Club to respond to homeowner

9

defaults in two specific ways. "[W]ithout liability to the owner," the Club can (1) "cut or cause to be cut . . . weeds and grass" and (2) "remove or cause to be removed . . . garbage, trash, rubbish and so on." There is no contention that demolishing Evanses' structures falls within the "weeds-and-grass" liability exception. We therefore understand the Club to contend that destroying the structures was within the "garbage-trash-rubbish-and-so-on" exception. The question then is whether the Club has established as a matter of law that the structures it destroyed are garbage, trash, rubbish, "and so on." We conclude the Club has not met this burden.

"Garbage," "trash," and "rubbish" are synonyms that refer to worthless or practically worthless things. "Garbage" means "refuse of any kind," and "refuse" is "the worthless or useless part of something." Webster's Third New International Dictionary 935, 1910 (1993). Trash is "something worth relatively little or nothing." *Id*. at 2432. And "rubbish" is "miscellaneous useless valueless waste or rejected matter." *Id*. at 1983.[8]

The Club's summary judgment fails to establish as a matter of law that the structures were worth nothing or almost nothing when the Club destroyed them. The Club supported its motion with affidavits, none of which state the structures' value, and photographs of the Evanses' property. We have reviewed the photographs, and they do not conclusively establish that the structures were worthless or practically so. The Club therefore failed to demonstrate as a matter of law that its deed restrictions permitted demolition of the structures, and the trial court erred to the extent it granted summary judgment based upon these

---

[8] Under the rule of *ejusdem generis*, when "general words follow a designation of particular classes of things, the particular designation restricts the meaning of the general words." *Martin v. Harris Cnty. Appraisal Dist.*, 44 S.W.3d 190, 195 n.3 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). Thus, the general phrase "and so on" must also refer to valueless or practically valueless things.

restrictions.

### C. Subsection 204.010(a)(6) of the Property Code did not authorize the Club to demolish the structures.

Under subsection 204.010(a)(6) of the Property Code, "[u]nless otherwise provided by the restrictions or the association's articles or bylaws, [a] property owners' association . . . may . . . regulate the use, maintenance, repair, replacement, modification, and appearance of the subdivision." Tex. Prop. Code Ann. § 204.010 (West 2007).[9] The Club argues that demolishing the structures on the Evanses' property was within this regulatory power. We disagree.

Chapter 204 of the Property Code does not define "regulate," *see* Tex. Prop. Code Ann. § 204.001 (West 2007), and no "more precise definition is apparent from the term's use in [] context," so we apply the ordinary meaning of the word. *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). "To regulate" means "to govern or direct according to rule . . . [or to] make regulations for or concerning." Webster's Third New International Dictionary 1913.

This power to govern by rule and to make regulations did not authorize the Club to enforce its regulations by demolishing the Evanses' property. Indeed, section 204.010 provides multiple enforcement mechanisms, none of which allow for such self-help measures. For example, the statute allows associations to "institute, defend, intervene in, settle or compromise litigation," and to assess fees and costs to property owners under certain circumstances. *See, e.g.* Tex Prop.

---

[9] On appeal, the Club contends that subsections (a)(19) and (a)(21) of section 204.010 are also "relevant," but the Club's motion for summary judgment relied exclusively upon subsection (a)(6). Because we limit our analysis to the summary judgment grounds raised in the trial court, we do not address the additional subsections that the Club raises for the first time on appeal. *See Rush v. Barrios*, 56 S.W.3d 88, 97 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) ("Our review is limited to the issues presented to the trial court in the motion for summary judgment, as the judgment may be affirmed only on grounds presented in the motion.").

11

Code Ann. § 204.010(a)(4), (8), (9), (10)–(12).

Because the statute specifically grants these limited enforcement powers, we do not construe its authorization to "regulate" as conferring the power to enforce regulations by any means an association deems appropriate. Indeed, if the authority to regulate in subsection (a)(6) included an unrestricted power to enforce, the specific enforcement mechanisms cited above would be superfluous. We therefore reject the Club's argument that section 204.010(a)(6) authorized its demolition of the structures on the Evanses' property. Because the Club failed to establish as a matter of law that it was authorized to demolish the structures, we sustain the Evanses' first issue.

**III.    The Club is not entitled to summary judgment on its claims for fines and costs because it failed to establish conclusively that it complied with statutory notice requirements.**

In their third issue, the Evanses contend that the trial court erred by assessing statutory fines against them and awarding the Club its demolition and clean up costs. The Evanses complain that "they never got an opportunity to have a hearing and [were] given no notice."[10] We agree.[11]

Under the relevant version of section 209.006 of the Property Code,

---

[10] In some circumstances, "[l]ack of notice is an affirmative defense that must be pled." *See Mastin v. Mastin*, 70 S.W.3d 148, 154 (Tex. App.—San Antonio 2001, no pet.). Here, the Evanses did not plead lack of notice as an affirmative defense, but raised it in their response to the Club's summary judgment motion. The Club has never argued that the Evanses failed to plead lack of notice, so even assuming that the Evanses were obliged to raise the issue as an affirmative defense, it was nonetheless tried by consent, so we address it. *See Roark v. Stallworth Oil & Gas, Inc.,* 813 S.W.2d 492, 494–95 (Tex.1991) (holding that unpled affirmative defense may serve as basis for summary judgment when raised in summary judgment motion and opposing party does not object because unpled claims or defenses tried by express or implied consent of parties are treated as if they had been raised in pleadings).

[11] In addition, the Club is not entitled to summary judgment for any demolition costs for the reasons discussed in Part II above.

"[b]efore a property owners' association may . . . file a suit against an owner . . . [or] levy a fine for a violation of the restrictions or bylaws or rules of the association, the association or its agent must give written notice to the owner by certified mail, return receipt requested.

. . . The notice must:

> (1) describe the violation or property damage that is the basis for the . . . charge[ ] or fine and state any amount due and owing from the owner; and

> (2) inform the owner that the owner:

> . . . .

> may request a hearing under Section 209.007 [governing hearings before property owners' association boards] on or before the 30th day after the date that the owner receives the notice.[12]

The Club's summary judgment evidence included three notices, but none of them informed the Evanses of their statutory right to a hearing.[13] Moreover, although the Club now seeks to levy a fine of over $80,000 based upon the Evanses' alleged violations, it never gave notice of its intent to assess this fine or stated the amount that it would seek. As a result, the summary judgment evidence does not establish as a matter of law that the Club complied with section 209.006, as it must before "fil[ing] a suit against [the Evanses] . . . [or] levy[ing] a fine." Act of June 14, 2001, 77th Leg., R.S., ch. 926, 2001 Tex. Gen. Laws 1859 (amended 2011). The trial court therefore erred by granting summary judgment on

---

[12] Act of June 14, 2001, 77th Leg., R.S., ch. 926, 2001 Tex. Gen. Laws 1859 (amended 2011) (current version at Tex. Prop. Code Ann. § 209.006 (West Supp. 2013)). The current version of this statute took effect on January 1, 2012, and it also requires associations to inform owners of "special rights or relief related to the enforcement action under federal law, including the Servicemembers Civil Relief Act (50 U.S.C. app. Section 501 et seq.), [that may be available] if the owner is serving on active military duty." Tex. Prop. Code Ann. § 209.006.

[13] The third notice informed the Evanses of the estimated costs of the demolition and clean-up, but nonetheless failed to apprise them of their right to a hearing before the board. Thus, even assuming for argument's sake that the Evanses received the notice, which they deny, the notice nonetheless fails to establish the Club's entitlement to summary judgment.

the Club's counter-claims, and we sustain the Evanses' third issue.

## CONCLUSION

Having sustained the Evanses' first and third issues, we reverse the trial court's judgment granting the Club's motion for summary judgment and dismissing the Evanses' claims against the Club with prejudice, and we remand the case for further proceedings.  We affirm the trial court's order dismissing the Evanses' claims against Casey Davis.


/s/  J. Brett Busby
Justice

Panel consists of Justices Boyce, Jamison, and Busby.

14