ACCEPTED
01-15-00436-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
7/15/2015 3:06:51 PM
CHRISTOPHER PRINE
CLERK

NO. 01-15-00436-CV

_____

IN THE COURT OF APPEALS
FIRST JUDICIAL DISTRICT
HOUSTON, TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

7/15/2015 3:06:51 PM

CHRISTOPHER A. PRINE
Clerk

_____

THE CITY OF FRIENDSWOOD AND KEVIN HOLLAND,
*Appellants*,

*v.*

PAUL AND CAROLYN HORN, MIKE AND LUCY STACY, PETE AND JUDY
GARCIA AND JANICE FRANKIE
*Appellees*.

_____

On Appeal from the 212th Judicial District Court
of Galveston County, Texas
Trial Court No. 14-CV-0490

_____

**APPELLANTS THE CITYOF FRIENDSWOOD
AND KEVIN HOLLAND'S BRIEF**

_____

CHAMBERLAIN, HRDLICKA, WHITE,
WILLIAMS & AUGHTRY
William S. Helfand
State Bar No. 09388250
Attorney-in-Charge
Charles T. Jeremiah
State Bar No. 00784338
1200 Smith Street, Suite 1400
Houston, Texas 77002
Telephone: (713) 654-9630
Telecopier: (713) 658-2553
ATTORNEYS FOR APPELLANTS,
CITY OF FRIENDSWOOD AND
KEVIN HOLLAND

**ORAL ARGUMENT REQUESTED**

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case. These representations are made so the judges of this court may evaluate possible disqualification or recusal.

**A.** **Parties:**

| | |
|---|---|
| Appellants: | City of Friendswood |
| | Kevin Holland |
| | |
| Appellees: | Paul and Carolyn Horn |
| | Mike and Lucy Stacy |
| | Pete and Judy Garcia |
| | Janice Frankie |

**B.** **Attorneys:**

| | |
|---|---|
| Appellant: | William S. Helfand |
| | Charles T. Jeremiah |
| | Chamberlain, Hrdlicka, White, |
| |    Williams & Aughtry |
| | 1200 Smith Street, Suite 1400 |
| | Houston, Texas 77002 |
| | |
| Appellees: | Aaron Pool |
| | James T. Sunosky |
| | Donato Minx Brown & Pool, PC |
| | 3200 Southwest Freeway, Suite 2300 |
| | Houston, Texas 77027 |

## STATEMENT REGARDING ORAL ARGUMENT

Appellants City of Friendswood and Kevin Holland believe that oral argument would be beneficial to the Court's resolution of this appeal.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS .......................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ............................................... iii

TABLE OF CONTENTS ................................................................................................iv

TABLE OF AUTHORITIES ........................................................................................vi

STATEMENT OF THE CASE ....................................................................................1

ISSUES PRESENTED ................................................................................................1

STATEMENT OF FACTS ..........................................................................................2

SUMMARY OF THE ARGUMENT ........................................................................7

STANDARD OF REVIEW ........................................................................................8

ARGUMENTS AND AUTHORITIES ......................................................................9

I.      Appellees bear the burder to establish a waiver of immunity. .........................9

II.     The City is immune from Appellees' common law tort claims ....................11

        A.      Limited waiver of immunity under the Texas Tort Claims Act..........11

        B.      Appellees' misrepresentation claim is barred by immunity................13

        C.      Appellees' nuisance claim is barred..................................................15

III.    Appellees fail to state and cannot state a viable claim of inverse
        condemnation...................................................................................................16

IV.     Appellees fail to state and cannot state a viable claim of breach of
        contract............................................................................................................19

V.      Appellees' request for declaratory judgment requesting an
        interpretation of the deed restrictions did not fall within a waiver of
        immunity from suit and the Court lacks jurisdiction....................................20

VI.     Appellees assertion of "ultra vires" does not present a viable claim
        which overcomes governmental immunity ...................................................23

VII.    Appellees have no viable claim and have not established jurisdiction under the Texas Open Meetings Act .............................................................26

VIII.   Appellees' claims against Mayor Holland are barred by derivative and official immunity ........................................................................................27

IX.     Appellees Claim for Injunctive Relief is Barred ...........................................29

X.      District Court erred in failing to dismiss all of Appellees' claims or, alternatively, individual claims.......................................................................30

CONCLUSION ...............................................................................................................30

PRAYER .........................................................................................................................30

CERTIFICATE OF SERVICE .......................................................................................32

CERTIFICATE OF COMPLIANCE...............................................................................33

APPENDIX .....................................................................................................................34

        Order Denying Defendant's Plea to the Jurisdiction and Motion to Dismiss.........................................................................................................TAB A

        Sec. 404. Hazard Mitigation (42 U.S.C. 5170c)....................................TAB B

# TABLE OF AUTHORITIES

**CASES**

*Alewine v. City of Houston*,
309 S.W.3d 771 (Tex.App. – Houston [14th Dist.] 2010, pet. denied) ...................................18

*Ballantyne v. Champion Builders, Inc.*
144 S.W.3d 417 (Tex. 2004)...........................................................................................28

*Barnes v. Mathis*,
353 S.W.3d 760 (Tex. 2011).............................................................................................15

*Benefit Realty Corp. v. City of Carrollton*,
141 S.W.3d 346 (Tex.App. – Dallas 2004, pet. denied) .............................................12

*Berry v. Tex. Dem. Party*,
449 S.W.3d 633 (Tex.App. – Austin 2014, no pet. hist.) ..........................................25

*Bird v. W.C.W.*,
868 S.W.2d 767 (Tex. 1994)...........................................................................................13

*Butnaru v. Ford Motor Company*,
84 S.W.3d 198 (Tex. 2002).............................................................................................29

*City of Corinth v. Nurock Development*,
293 S.W.3d 360 (Tex.App. – Fort Worth 2009, no pet.).........................................22

*City of Dallas v. Jennings*,
142 S.W.3d 310 (Tex. 2004).............................................................................................16

*City of Dallas v. Turley*,
316 S.W.3d 762 (Tex.App. – Dallas 2010, pet. denied) .............................................23

*City of Dallas v. VSC, LLC*,
347 S.W.3d 231 (Tex. 2011).............................................................................................17

*City of El Paso v. Heinrich*,
284 S.W.3d 366 (Tex. 2009).................................................................................24, 27, 29

*City of Fort Worth v. Pasturek Industries*,
Inc., 48 S.W.3d 366, 372 (Tex.App. – Fort Worth 2001, no pet.).........................14

*City of Galveston v. State*,
217 S.W.3d 466 (Tex. 2007).................................................................................9, 10

*City of Garland v. Rivera*,
146 S.W.3d 334 (Tex. App.—Dallas 2004, no pet.)..............................................12

*City of Houston v. Boyle*,
   148 S.W.3d 171 (Tex. App.—Houston [1st Dist.] 2004, no pet.) ....................................11, 14

*City of Houston v. Song*,
   2013 WL 269036 (Tex.App. – Houston [14th Dist.] 2013).......................................................17

*City of Houston v. Swinerton Builders, Inc.*,
   233 S.W.3d 4 (Tex. App.—Houston [1st Dist.] 2007, no pet) .................................................10

*City of Lancaster v. Chambers*,
   883 S.W.2d 650 (Tex. 1994)...................................................................................................28

*City of North Richland Hills v. Home Town Urban Partners, Ltd.*,
   340 S.W.3d 900 (Tex.App. – Fort Worth 2011, no pet.).........................................................22

*City of Pasadena v. Thomas*,
   263 S.W.3d 43 (Tex. App.—Houston [1st Dist.] 2006, no pet.) ...............................................9

*City of Plano v. Homoky*,
   294 S.W.3d 809 (Tex.App. – Dallas 2009, no pet.).................................................................12

*City of San Antonio v. Fourth Court of Appeals*,
   820 S.W.2d 762 (1991)...........................................................................................................26

*Cowling v. Colligan*,
   312 S.W.2d 943 (Tex. 1958).....................................................................................................7

*Dallas Area Rapid Transit v. Whitley*,
   104 S.W.3d 540 (Tex. 2003)......................................................................................................9

*De Los Santos v. City of Robstown*,
   2012 WL 6706780 (Tex.App. – Corpus Christi 2012, no pet.) ..........................................21, 24

*Devonshire Place Neighborhood Association v. Devonshire Place, Ltd.*,
   1999 WL 82617 (Tex.App. – Houston [1st Dist.] 1999, no pet.) (unpublished)....................22

*Ethio Express Shuttle Service v. City of Houston*,
   164 S.W.3d 751 (Tex.App. – Houston [14th Dist.] 2005, no pet.).........................................14

*Federal Sign v. Texas Southern Univ.*,
   951 S.W. 2d 401 (Tex. 1997).....................................................................................................9

*Felts v. Harris County*,
   915 S.w.2d 482 (Tex. 1996) ....................................................................................................18

*Green Int'l Inc. v. State*,
   877 S.W.2d 428 (Tex. App.—Austin 1994, writ dism'd) ........................................................10

*Harris County, Tex. v. Cabazos*,
 177 S.W.3d 105 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ...........................................15

*Harris County v. Sykes*,
 136 S.W.3d 635 (Tex. 2004)............................................................................................9

*Hearts Bluff Game Ranch, Inc. v. State*,
 381 S.W.3d 468 (Tex. 2012).........................................................................................17

*Hoff v. Nueces County*,
 153 S.W.3d 45 (Tex. 2004)............................................................................................8

*Holloway v. Dekkers*,
 380 S.W.3d 315 (Tex.App. – Dallas 2012, no pet.)................................................................19

*Hopkins v. Strickland*,
 2013 WL 1183302 (Tex.App. – Houston [1st Dist.] 2013) (unpublished)..............................28

*K.C. Cunningham v. Tarski*,
 365 S.W.3d 179 (Tex.App. – Dallas 2012, pet. denied) ..........................................................13

*Laub v. Pesikoff*,
 979 S.W.2d 686 (Tex.App. – Houston [1st Dist.] 1998, pet. denied)......................................13

*Martinez v. Hardy*,
 864 S.W.2d 767,772 (Tex. App. 1993)...............................................................................14

*Marzo Club, LLC v. Columbia Lakes Homeowner's Ass'n*,
 325 S.W.3d 791 (Tex.App. – Houston [14th Dist.] 2010, no pet.)...........................................23

*Mission Consol. Indep. Sch. Dist. v. Garcia*,
 253 S.W.3d 653 (Tex. 2008)...................................................................................11, 27

*Moers v. Harris County Appraisal District*,
 ___ S.W.3d ___ (Tex. App. – Houston [1st Dist.] 2015, no pet. hist.)..................................25

*Mustang Special Utility District v. Providence Village*,
 392 S.W.3d 311 (Tex.App. – Fort Worth 2012, no pet.) ....................................21, 22, 23, 26

*Patel v. Texas Dept. of Licensing and Regulation*,
 ___ S.W.3d ___ at *4 (Tex. 2015)...............................................................................24, 25

*Pilarcik v. Emmons*,
 966 S.W.2d 474 (Tex. 1998)............................................................................................23

*Scott v. Prairie View A & M Univ.*,
 7 S.W.3d 717 (Tex. App.—Houston [1st Dist.] 1999, pet. denied)........................................12

*Sharma v. Vinmar Int'l Ltd.*,
231 S.W.3d 405 (Tex.App. – [14th Dist.] 2007, no pet.) ........................................................29

*State v. Momin Properties, Inc.*,
409 S.W.3d 1 (Tex.App. – Houston [1st Dist.] 2013 pet. denied)............................................18

*State v. Schmidt*,
867 S.W.2d 769 (Tex. 1993)....................................................................................................18

*Tex. Dep't of Criminal Justice v. Miller*,
51 S.W.3d 583, 587 (Tex. 2001)...............................................................................................12

*Tex. Dep't. of Parks & Wildlife v. Miranda*,
133 S.W.3d 217 (Tex. 2004).........................................................................................8, 9, 12, 14

*Tex. Dep't of Parks & Wildlife v. Sawyer Trust*,
354 S.W.3d 384 (Tex. 2011)......................................................................................................21

*Tex. Dep't of Transp. v. A.P.I. Pipe & Supply, LLC*,
397 S.W.3d 162 (Tex. 2013)......................................................................................................17

*Tex. Dep't of Transp. v. City of Sunset Valley*,
8 S.W. 3d 727 (Tex. App.—Austin 1999, no pet.) ...................................................................10

*Tex. Natural Res. Conservation Comm'n v. IT-Davy*,
74 S.W.3d 849 (Tex. 2002).................................................................................................21, 22

*Texas Bay Cherry Hill v. City of Fort Worth*,
257 S.W.3d 379 (Tex.App. – Fort Worth 2008, no pet.) .........................................................12

*Texas DOT v. Jones*,
8 S.W.3d 636 (Tex. 1999) (*per curiam*) .....................................................................................8

*Tooke v. City of Mexia*,
197 S.W.3d 325 (Tex. 2006).....................................................................................................20

*Town of Flower Mound v. Rembert Enterprises, Inc.*,
369 S.W.3d 465 (Tex. App. – Fort Worth 2012, pet. denied) ...........................................24, 25

*Uptegraph v. Sandalwood Civic Club*,
312 S.W.3d 918 (Tex.App. – Houston [1st Dist.] 2010, no pet.) .............................................23

*Wichita Falls State Hosp. v. Taylor*,
106 S.W.3d 692 (Tex. 2003)........................................................................................................9

**STATUTES**

42 U.S.C. 5170c(b)(2)(B)(i)...................................................................................2

TEX. CIV. PRAC. & REM. CODE § 37.003...............................................................21

TEX. CIV. PRAC. & REM. CODE § 51.014.................................................................8

TEX. CIV. PRAC. & REM. CODE § 101.021........................................................11, 14

TEX. CIV. PRAC. & REM. CODE § 101.057..............................................................15

TEXAS LOCAL GOVERNMENT CODE § 271.152....................................................19, 20

TEXAS LOCAL GOVERNMENT CODE § 551.142..........................................................27

## STATEMENT OF THE CASE

*Nature of the case*:

*Trial court*: The Honorable Patricia Grady, 212th Judicial District Court of Galveston County, Texas.

*Trial court's disposition*: The trial court conducted a hearing on March 4, 2015 on the City and Holland's plea to the jurisdiction, motion to dismiss and motion to strike discovery. On April 20, 2015, the Court entered an order denying the City and Holland's plea and motion.

## ISSUES PRESENTED

1. The trial court erred in denying the City's plea to the jurisdiction and motion for summary judgment because the Appellees' claims against the City are barred by governmental immunity.

2. The trial court erred in denying the Kevin Holland's plea to the jurisdiction and motion to dismiss because the Appellees' claims are barred by derivative immunity and official immunity.

1

## STATEMENT OF FACTS

The critical and dispositive facts presented by this appeal are undisputed. This case arises out of the City's acquisition of flood-prone property in the Imperial Estates Subdivision in the City of Friendswood. Specifically, after severe flooding from Tropical Storm Allison in June 2001, the City obtained title to virtually all of the devastated property in the subdivision, specifically 38 of the 42 lots, more than *ninety percent* (90%) of the lots[1] through a Hazard Mitigation Program administered by the Federal Emergency Management Administration ("FEMA"). All homeowners of the subdivision were advised of the FEMA program and the four Appellees were the only individuals who chose not to participate. In fact, the only remaining structures on the entirety of the subdivision acreage for the past fourteen years are Appellees' now re-built houses.[2]

The federal grant of the land to the City and Drainage District, like all such grants, required the City to maintain the property as open or "green" space as recreational space, park property or for drainage and water retention.[3] FEMA's purpose in requiring such use in this program is to ensure that the flood prone

---

[1]   In addition, the Galveston County Drainage District acquired one lot.

[2]   The Appellees' residences are surrounded by unimproved property. The property the City acquired is adjacent to the pre-existing Friendswood city park known as 1776 Park.

[3]   See, Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. 5170c(b)(2)(B)(i).

property would not be the subject of future similar catastrophic water damage and loss.

Roughly ten years after the City acquired the lots, on November 19, 2012, the Appellees filed suit claiming that deed restrictions, enacted over fifty years earlier, governed the City's use of the lots it acquired and, more specifically that the City was required to use its lots only for "residential purposes."[4] Appellees theorized they had four votes and the City one vote, and thus *Appellees had complete control over the City's use of the property* irrespective of the supremacy of the federal acquisition and conditional grant requirement. The City filed a plea to the jurisdiction. On the eve of the hearing on the plea, on May 9, 2013, Appellees nonsuited their original suit.

To be sure, the City disputed the Appellees' contentions raised in the original suit. City's use of the property was and is not inconsistent with or in violation of any deed restrictions. First, the FEMA mandated use as open or "green" space, or park property is quite consistent with residential purposes as defined in the deed restrictions [Supp. C.R. 13-14]. But, regardless of whether consistent, Appellees' theory of any potential liability of the City is baseless. As

---

[4] To be sure, Appellees have never specifically sought to have the City construct new residences on the lots, or to sell the lots for new residences, or in any other way use the lots for residential purposes. The City would be prohibited from doing so under the express terms of the federal grant.

an undisputed owner of thirty-eight lots, the City has one vote per lot and the deed restrictions, if they did apply, guarantee the City at least thirty-eight votes compared to the Appellees' four. Indeed, this is clear from the deed restrictions to which Appellees point: "each *lot* shall only have one vote." [C.R. 165 (Plaintiff's Second Amended Original Petition ¶ 15)] (emphasis added); Supp. C.R. 17].

Accordingly, the City disputed and disputes any contention by Appellees that its use was governed by, or violated, deed restrictions. However, to leave no doubt, after posting a public agenda and conducting an open meeting in full compliance with Texas law, the City cast its thirty-eight votes to approve a declaration of amended deed restrictions for its lots and filed that decision in the Galveston County Property Records on or about July 8, 2013. [C.R. 128; 138-142; Supp. C.R. 27-30]. Notably, the recorded document expressly states that it *only* applies to the thirty-eight City acquired lots, [Supp. C.R. 27-30], and it tracks the federal requirements of open space [C.R. 28, ¶ 2-2.2]. The Declaration was executed by Mayor Kevin Holland in due course as authorized agent for the City. [Id; C.R. 143].

Approximately one year later after the Declaration was filed, on May 1, 2014, Appellees filed this same lawsuit a second time; this time against the City and Mayor Holland [C.R. 5-16]. Appellees initially made what were essentially the same claims asserted in their first lawsuit: an action for declaratory judgment

4

interpreting the deed restrictions. However, in the second suit they added a claim of "misrepresentation" against both Mayor Holland and the City [Id]. Appellants filed an answer, containing a motion to dismiss Appellant Holland in light of his individual immunity from suit. [C.R. 17-20]. Appellants then filed a Plea to the Jurisdiction, along with a renewed motion to dismiss Mayor Holland and motion to stay discovery based on immunity [C.R. 54-67; 22-53]. The plea was set for hearing and heard on October 16, 2014 [C.R. 70-71]. On the eve of the hearing, Appellees filed their First Amended Petition urging new theories; conclusory, factually unsupported allegations of violation of the Texas Open Meetings Act and breach of contract, an allegation the Mayor had engaged in an *ultra vires* act, and that the City had engaged in proprietary, not governmental functions [C.R. 100-113]. Because these claims were just as insupportable under Texas law, particularly in light of the City's and the Mayor's immunity from suit, Appellants supplemented their plea with City records disproving any claim of an Open Meetings Act violation as well as Appellees' newly added claims. [C.R. 114-161].

At the request of Appellants' counsel, the Court reset the plea and motions for a second hearing for November 20, 2014. Again, on the eve of the hearing, Appellees amended in an effort to avoid the appropriate dismissal of their suit. In their Second Amended Petition Appellees added to their montage of claims two more new theories: nuisance and inverse condemnation [C.R. 162-179]. The

Appellants supplemented their plea once again to address the new claims [C.R. 185-186]. The District Court heard the plea again but did not issue a ruling and, before the judge who heard the plea ruled, a new presiding judge took the bench on January 1, 2015. The Plea and motions were reset for a third hearing on March 4, 2015 [C.R. 187-188]. The Appellants supplemented their plea further to address the Appellants' immunity from the newest claims in greater detail [C.R. 189-192]. The District Court did not rule at the hearing but issued a ruling on April 20, 2015 denying the City's plea and the Mayor's Motion to Dismiss [C.R. 193].[5] Appellants timely filed a notice of appeal [C.R. 199-200].

Apparently recognizing the applicability of Appellants' immunity from suit and in a desperate, although not necessarily legitimate, effort to avoid dismissal Appellees have, each time with the benefit of the Appellants' motions to dismiss, simply recast the same basic factual allegations into numerous different claims. The thrust of Appellees' contention is that *their* desires should dictate the City's use *of its own property* and supersedes the obligations imposed on the City by the federal grant and the will of the City residents.

Regardless how Appellees wish to describe, or re-describe, their claims, the City is immune from their claims and thus the Court should have granted its plea to the jurisdiction. Additionally, Mayor Holland is entitled to immunity and the

---

[5] The Court notified the parties of the Order on May 5, 2015 [C.R. 196-198].

6

Court should have granted his plea to the jurisdiction and his motion to dismiss as well. The District Court erred on both and this Court should reverse the decision below and render judgment in favor of both the City and its Mayor.

## SUMMARY OF THE ARGUMENT

Even disregarding for a moment the Appellants' immunity from suit, the Appellees claims were, and are, devoid of legal merit, even if they were suing private defendants. The fifty year old deed restrictions upon which Appellees rely simply do not govern the City's use or require the City to use the lots for residential purposes, for numerous reasons. Regardless of whether the deed restrictions were ever enforced, to be sure the widespread destruction occasioned by Tropical Storm Allison's severe flooding of the subdivision and intervention by FEMA in 2001 constituted an obvious change of conditions so substantial it rendered the deed restrictions inapplicable and obsolete.[6] In addition, the deed restrictions were effectively abandoned when more than ninety percent (90%) of the lots were acquired by the City of Friendswood and maintained as green space for more than a decade without objection. Irrespective, the City's use of public property is not subject to the control of private interests of Appellees.

However, the simple fact is that, in not requiring the Appellees to prove a waiver of the Appellants' immunity from suit, the trial court erred in denying the

---

[6]     Compare *Cowling v. Colligan*, 312 S.W.2d 943, 945 (Tex. 1958).

7

City's Plea to the Jurisdiction and Mayor Holland's Motion to Dismiss. As a matter of law Appellees' claims fail to overcome the City's governmental immunity. Appellees' claims fail to establish the elements of any claim that triggers a constitutional or statutory waiver of the City's governmental immunity. Moreover, Appellees' claims against Mayor Holland are barred by both derivative and official immunity. Accordingly, the trial court erred when it failed to dismiss Appellee's suit with prejudice for lack of jurisdiction.

## STANDARD OF REVIEW

This Court has jurisdiction to review an interlocutory order denying a plea to the jurisdiction by a governmental unit, or request for dismissal based on immunity by an officer of a political subdivision of the state. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(5) and (8).

The Court reviews the question of subject matter jurisdiction, a legal question, *de novo, Hoff v. Nueces County*, 153 S.W.3d 45, 48 (Tex. 2004), and the question of whether uncontroverted evidence of jurisdictional facts demonstrates subject-matter jurisdiction is also a question of law. *Tex. Dep't. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

Governmental or individual "immunity from suit defeats a trial court's subject matter jurisdiction and thus is properly asserted in a plea to the jurisdiction." *Texas DOT v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999) (*per curiam*).

8

The complainant has the burden to plead facts affirmatively showing the trial court has subject-matter jurisdiction. *Tex. Dep't of Parks & Wildlife*, 133 S.W.3d at 226. A plea to the jurisdiction seeks dismissal of a case for lack of subject matter jurisdiction. *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004).

## ARGUMENTS AND AUTHORITIES

**I.** **Appellees bear the burder to establish a waiver of immunity.**

Immunity from suit bars an action against a governmental entity unless the State has expressly consented to the suit. *See Federal Sign v. Texas Southern Univ.*, 951 S.W. 2d 401, 405 (Tex. 1997). "It is settled in Texas that for the Legislature to waive…immunity, a statute or resolution must contain a clear and unambiguous expression of the Legislature's waiver of immunity." *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 696 (Tex. 2003). For suits brought against governmental entities, the plaintiffs must affirmatively demonstrate that sovereign immunity has been waived. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). Accordingly, the City of Friendswood, like all other governmental units in Texas, is entitled to a presumption that Plaintiffs' claims are barred by governmental immunity. *See Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003); *City of Pasadena v. Thomas*, 263 S.W.3d 43, 45 (Tex. App.—Houston [1st Dist.] 2006, no pet.). The Texas Supreme Court has characterized this as a "heavy presumption." *City of Galveston v. State*, 217

9

S.W.3d 466, 469 (Tex. 2007). Thus, in a plea to jurisdiction, it is not the defendant's burden to present evidence to support waiver; it is the plaintiff's burden to plead facts demonstrating waiver of immunity. *Id.*; See also *Green Int'l Inc. v. State*, 877 S.W.2d 428, 437 (Tex. App.—Austin 1994, writ dism'd).

> Because a governmental unit is protected from suit by governmental immunity, pleadings in a suit against a governmental unit must affirmatively demonstrate, either by reference to a statute or express legislative permission that the Legislature consented to the suit.

*City of Houston v. Swinerton Builders, Inc.*, 233 S.W.3d 4, 10 (Tex. App.—Houston [1st Dist.] 2007, no pet). It is beyond reasonable argument that immunity is, as a matter of law, presumed unless it a plaintiff disproves it and a court that denies a claim of immunity must expressly identify a specific legislative enactment that clearly and unequivocally demonstrates a clear legislative intent to waive the City's immunity under the specific facts, and for the specific causes of action, alleged. *Id.*

Therefore, a court may not consider the merits of a plaintiff's substantive claims, no matter how arguably compelling, until the plaintiff alleges facts establishing waiver of immunity and, thus, that the court has subject-matter jurisdiction to decide the controversy. *Tex. Dep't of Transp. v. City of Sunset Valley*, 8 S.W. 3d 727, 730 (Tex. App.—Austin 1999, no pet.).

10

## II. The City is immune from Appellees' common law tort claims

### A. *Limited waiver of immunity under the Texas Tort Claims Act*

Appellees sued the City and Mayor Holland for two common law torts – misrepresentation and nuisance. The Texas Tort Claims Act ("TTCA") "is the only, albeit limited, avenue for common-law recovery against the government." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008). The TTCA does not create a cause of action against governmental units but only establishes a limited waiver of governmental immunity, in narrowly defined circumstances. *City of Houston v. Boyle*, 148 S.W.3d 171, 179 (Tex. App.— Houston [1st Dist.] 2004, no pet.) (citing *City of Tyler v. Lykes*, 962 S.W.2d 489, 494 (Tex. 1997)). Put another way, unless immunity is waived by the TTCA, the governmental unit remains immune from suit. *Boyle*, 148 S.W.3d at 179.

Unless an express waiver applies, the TTCA bars claims based upon a City's governmental functions. There can be no question here but that Appellees' claims relate only to governmental functions. The TTCA expressly defines municipal functions exercised in the interest of the general public, such as those involved here including "parks," recreational, flood control, and "zoning, planning and plat approval" are governmental functions of the City covered by the TTCA. TEX. CIV. PRAC. & REM. CODE §§ 101.0215(9), (11), (13), (19), (23), (29), (30) and (32). Moreover, the "[a]cquisition of land for a public purpose is a governmental

11

function," *Benefit Realty Corp. v. City of Carrollton*, 141 S.W.3d 346, 349 (Tex.App.—Dallas 2004, pet. denied), and redevelopment of the land, and use for park or recreational purposes are likewise governmental functions. *Cf.*, *Texas Bay Cherry Hill v. City of Fort Worth*, 257 S.W.3d 379 (Tex.App.—Fort Worth 2008, no pet.) and *City of Plano v. Homoky*, 294 S.W.3d 809, 815 (Tex.App.—Dallas 2009, no pet.).

The waiver is narrow. For a governmental unit to be subject to suit for a waiver of immunity under the TTCA, (1) the claim must arise under one of the three specific areas of liability listed in section 101.021; and (2) the claim must not fall within an exception to the waiver of sovereign immunity. See *City of Garland v. Rivera*, 146 S.W.3d 334, 338 (Tex. App.—Dallas 2004, no pet.) and *Scott v. Prairie View A & M Univ.*, 7 S.W.3d 717, 719 (Tex. App.—Houston [1st Dist.] 1999, pet. denied). Appellees' claims fail both prongs here. The TTCA provides a limited waiver of governmental immunity and allows suits to be brought against governmental entities in a few, narrowly defined circumstances. *Texas Dept. of Criminal Justice v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001). Governmental immunity is waived under the TTCA in *only* three areas – none of which are implicated here – (i) use of publicly owned automobiles, (ii) premises defects, and (iii) injuries arising out of conditions or uses of certain property. See*, Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225 (Tex. 2004). Unless the

common law tort claims fall within this waiver of governmental immunity established by the Texas Legislature, they are barred.

### B. Appellees' misrepresentation claim is barred by immunity

The elements of misrepresentation are (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies 'false information' for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *K.C. Cunningham v. Tarski*, 365 S.W.3d 179, 186-87 (Tex.App.—Dallas 2012, pet. denied). Appellees misrepresentation claim surely doesn't meet these elements. The claim purports to rest on the assertion in April 2013 in the City's plea in the first lawsuit averring that no action had been taken with respect to the property rendering Appellees' claims unripe [See, C.R. 168-69 (Plaintiff's Second Amended Petition, ¶ 21)].[7]

First and foremost, a statement in a judicial proceeding enjoys privilege and cannot support a misrepresentation claim.[8] Perhaps more glaringly undermining

---

[7] In addition to other dispositive grounds.

[8] See, e.g., *Bird v. W.C.W.*, 868 S.W.2d 767, 771-72 (Tex. 1994); *Laub v. Pesikoff*, 979 S.W.2d 686, 691-92 (Tex.App.—Houston [1st Dist.] 1998, pet. denied).

13

the claim, the April 2013 filing occurred months *before* the City Council Meeting and filing of the declaration of amended deed restrictions – and thus was quite obviously accurate. While Appellees' claim of misrepresentation, devoid of the basic elements of a legally cognizable misrepresentation claim, appears to be frivolous on its face, any claim for misrepresentation is plainly barred by governmental immunity.

Appellees here never alleged any of their claims arise out of (i) the use of a publicly owned automobile, (ii) a premises defect, or (iii) an injury arising out of a condition or use of certain property. *Miranda*, 133 S.W.3d at 225; TEX. CIV. PRAC. & REM. CODE ANN. § 101.021. Appellees' misrepresentation claim does not arise out of the use of a publicly owned vehicle, a premises defect, or a condition or use of property, even under their broadest reading [C.R. 173]. Therefore, "the general rule of immunity controls." *Boyle*, 148 S.W.3d at 180 (citing *Miranda*, 133 S.W.3d at 226–28). Accordingly, Appellees failed to affirmatively demonstrate any waiver of the City's immunity under the TTCA. *See Martinez v. Hardy*, 864 S.W.2d 767,772 (Tex. App. 1993). This Court's own precedent is quite clear on the issue. See *Ethio Express Shuttle Service v. City of Houston*, 164 S.W.3d 751, 757-58 (Tex.App.—Houston [14th Dist.] 2005, no pet.) (misrepresentation claim did not fall within waiver of immunity and was thus barred); see also, *City of Fort Worth*

*v. Pasturek Industries*, Inc., 48 S.W.3d 366, 372 (Tex.App.—Fort Worth 2001, no pet.) (same).

Further, to the extent, if any, Appellees claim intentional misrepresentation, the claim is further barred because the TTCA expressly states that it does not waive immunity for claims arising out of intentional torts. TEX. CIV. PRAC. & REM. CODE ANN. § 101.057(2); *Harris County, Tex. v. Cabazos*, 177 S.W.3d 105, 109 (Tex. App.—Houston [1st Dist.] 2005, no pet.). Accordingly, Appellees' misrepresentation claim must be dismissed as it not only fails to fall within a waiver of immunity, it is *specifically excluded* from the waiver set forth in the Texas Tort Claims Act. Accordingly, the Court has no jurisdiction over the misrepresentation claim against the City, and the claim must be dismissed. Mayor Holland's official immunity and derivative immunity under 101.106 further bar any such claim against him as discussed below.

### C. Appellees' nuisance claim is barred

In their Second Amended Petition, Appellees added a tort claim against the City for nuisance, purportedly based on the increase in traffic on nearby streets or City owned lots [C.R. 174-176]. Texas law generally defines a nuisance as "a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities." *Barnes v. Mathis*, 353 S.W.3d 760, 763 (Tex. 2011). However, the

15

Texas Supreme Court has made clear that a claim of "nuisance" simply doesn't overcome a governmental entity's immunity from tort claims. *City of Dallas v. Jennings*, 142 S.W.3d 310, 313-16 (Tex. 2004). Rather, a plaintiff must establish that the circumstances are sufficient to constitute an inverse condemnation, and pursue liability under a constitutional takings theory. *Id.*

To be sure, Appellants here failed to identify any specific harm to their persons or property by any action of Appellants of the nature actionable as a nuisance. Even if they did, Appellees' nuisance claim is barred by governmental immunity. Again, the claim of nuisance is premised on Appellees' contention that the subdivision will have increased pedestrian and vehicular traffic in the neighborhood which they speculate might interfere with their peaceful use and enjoyment of their property [C.R. 174-176]. None of the allegations include claimed use of motor driven equipment or other facts which would even arguably present a waiver of tort immunity under the TTCA. Thus, Appellees' nuisance claim is barred by immunity. *Cf.*, *Jennings*.

III. **Appellees fail to state and cannot state a viable claim of inverse condemnation.**

Perhaps recognizing the effect of immunity on their common law claims, after reading the City's briefing, Appellees added a claim of inverse condemnation for the first time in their Second Amended Petition [C.R. 174-76]. However, "[t]o properly assert an inverse condemnation claim against a governmental entity, a

16

party must plead that the governmental entity intentionally performed an act in the exercise of its lawful authority that resulted in the taking, damaging or destruction of the party's property for public use." *City of Houston v. Song*, 2013 WL 269036 (Tex.App.—Houston [14th Dist.] 2013), citing, *Gen Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex. 2001). "Determining whether a taking has occurred [in an inverse condemnation suit] is a question of law." *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 476 (Tex. 2012).

Immunity can be waived for a claim of inverse condemnation. However, Texas law is clear that, if, as here, Appellees have not stated a *viable* inverse condemnation claim, the City retains its immunity from any such claim(s). See, *City of Dallas v. VSC, LLC*, 347 S.W.3d 231, 250 (Tex. 2011); *Tex. Dept. of Transp. v. A.P.I. Pipe & Supply, LLC*, 397 S.W.3d 162, 167 (Tex. 2013); *Heart's Bluff,* at 476. Merely asserting an inverse condemnation theory, as Appellants did in their most recent petition, does not circumvent the City's governmental immunity.

There is no authority for the proposition advanced by Appellants that the City, by maintaining its *own* property as green or open space, has condemned or taken *their* adjacent property. In essence, Appellees complain the City is using its own property for public use and Appellees prefer to have their four lots *and the City's thirty-eight lots* left to Appellees' own exclusive use and enjoyment. While

17

there are no allegations which would even approach the degree of a constitutional taking presented in this case, Texas Courts have made clear that, even where public works introduce increased traffic and noise to a community, such works do not constitute a compensable taking. See *Felts v. Harris County*, 915 S.w.2d 482 (Tex. 1996) (substantial increase in noise from constructed highway not taking); *Alewine v. City of Houston*, 309 S.W.3d 771, 779 (Tex.App.—Houston [14th Dist.] 2010, pet. denied), citing, *City of Austin v. Travis County Landfill Co.*, 73 S.W.3d 234, 244 (Tex. 2002) (increased noise from nearby airport overflights not taking "absent a showing by individual homeowners that their houses are no longer usable for residential purposes"); *State v. Momin Properties, Inc.*, 409 S.W.3d 1 (Tex.App.— Houston [1st Dist.] 2013 pet. denied) (overpass diverted traffic). The Texas Supreme Court has made clear that "an abutting property owner does not have a vested interest in the traffic that passes in front of his property." *State v. Schmidt*, 867 S.W.2d 769, 774 (Tex. 1993). The Appellees allegations in this case, even if true, fall far short of establishing any basis to assert their property was taken, damaged or destroyed for public use. See, *Little Tex*, supra.

Here, there could be no viable taking arising out of the City's use of its own property, and surely by its maintenance of its own property as green space. While Appellees may find it undesirable to have members of the public on the the City's park property, this hardly constitutes a constitutional taking, damaging or

18

destruction of their property. As such, Appellees stated no viable claim of inverse condemnation, they failed to demonstrate that their claims would overcome immunity and failed to establish the trial court's jurisdiction. The trial court erred and the claim should have been dismissed. This Court should reverse and render dismissal in favor of Appellants.

## IV. Appellees fail to state and cannot state a viable claim of breach of contract.

Appellees asserted a breach of contract claim in their First and Second Amended Petitions [C.R. 100-112; 162-178]. A claim for breach of contract requires proof of; (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of that breach. *Holloway v. Dekkers*, 380 S.W.3d 315, 324 (Tex.App.—Dallas 2012, no pet.).

Again, a governmental entity such as the City is entitled to governmental immunity except to the extent, if any, such immunity has been expressly waived by the Texas Legislature. Any waiver of immunity for breach of contract is governed by Section 271.152 of the Texas Local Government Code, which provides,

> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

19

TEX. LOCAL GOV'T CODE § 271.152 (emphasis added); See also, *Tooke v. City of Mexia*, 197 S.W.3d 325 (Tex. 2006). "'Contract subject to this subchapter' means a written contract stating the essential terms of the agreement for providing goods or services to the local government entity…" *Id*., § 271.152(2) (emphasis added).

Quite simply, there were never allegations in this case that related to a contract for the provision of "goods or services" and Appellees have neither recited the existence of or shown a *written* contract for either. Therefore, § 271.152 does not provide for a waiver of immunity and there is no other statutory basis for waiver of immunity based upon a claim of breach of contract. Accordingly, the trial court erred in failing to dismiss Appellees' breach of contract claim for want of jurisdiction.

**V.** **Appellees' request for declaratory judgment requesting an interpretation of the deed restrictions did not fall within a waiver of immunity from suit and the Court lacks jurisdiction**

Appellees also requested a declaratory judgment interpreting the deed restrictions, specifically that the City was entitled to fewer votes than the Appellees collectively and, in their most recent petition, that the Court declare that the City's Declaration of Amended Deed Restrictions to be void as contrary to the Imperial Estates' deed restrictions [C.R. 171-72]. Appellees reference and rely upon Section 37 of the Texas Civil Practice & Remedies Code, the Texas Uniform Declaratory Judgments Act ("UDJA"). The UDJA generally provides that a "[a]

20

court of record within its jurisdiction has power to declare rights, status, and other legal relations…" Tex.Civ.Prac. & Rem. Code 37.003(a). However, and essential here is the well-settled legal proposition that "immunity will bar an otherwise proper UDJA claim that has the effect of establishing a right to relief against the State for which the legislature has not waived immunity." *Mustang Special Utility District v. Providence Village*, 392 S.W.3d 311, 315-16 (Tex.App.—Fort Worth 2012, no pet.), citing, *Tex. Parks & Wildlife Dep't v. Sawyer Trust*, 354 S.W.3d 384, 388 (Tex. 2011).

Appellees' claim for declaratory relief does not fall within a waiver of governmental immunity. "The law is clear that the UDJA waives governmental immunity only for (1) claims challenging the validity of an ordinance or statute and (2) *ultra vires* claims against state officials who allegedly act without legal or statutory authority or who fail to perform a purely ministerial act." *Id*, citing *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372-73 & n. 6 (Tex. 2009). See also *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002).[9]

Notably, immunity is not waived where, as here, a party seeks to have the Court construe or interpret the terms of a *contract*, rather than a *statute* or

---

[9] Even in the case of "an *ultra vires* action, the governmental entity [itself] remains immune from suit" *De Los Santos v. City of Robstown*, 2012 WL 6706780 (Tex.App.—Corpus Christi 2012, no pet.), citing, *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009).

21

*ordinance.* *City of Corinth v. Nurock Development*, 293 S.W.3d 360, 369 (Tex.App.—Fort Worth 2009, no pet.) (emphasis added), citing to *IT-Davy*, 74 S.W.3d at 855-56; *Mustang*, at 316.[10]  See also, *City of North Richland Hills v. Home Town Urban Partners, Ltd.*, 340 S.W.3d 900, 911 (Tex.App.—Fort Worth 2011, no pet.).  Governmental immunity bars requests for declaratory relief against a governmental entity (1) that constitute a suit to recover money damages or (2) that seek to establish a contract's validity, to enforce performance, or to impose contractual liabilities – actions that effectively control state action as such efforts interfere with the separation of governmental powers. *Mustang*, at 316.

Texas law precludes Appellees' request for declaratory relief because, "deed restrictions are a *contract* between the property owner and the neighborhood association." *Devonshire Place Neighborhood Association v. Devonshire Place, Ltd.*, 1999 WL 82617 at *4 (Tex.App.—Houston [1st Dist.] 1999, no pet.) (unpublished), citing, *Tien Tao Ass'n, Inc. v. Kingsbridge Park Community Ass'n, Inc.*, 953 S.W.2d 525, 532-33 (Tex.App. – Houston [1st Dist.] 1997, no writ) ("deed restrictions comprise a contract between the homeowner and neighborhood association"). Accordingly, Texas law subjects deed restrictions to the general

---

[10]     The Court in *Nurock* explained that "[s]tatutes or ordinances enacted by legislative bodies are designed to address broad questions of public policy and to promulgate laws that those subject to the government's power must follow in future conduct" and are thus distinguishable from a contractual dispute between specific parties. *Id*, at 368-69.

rules of contract construction. *Marzo Club, LLC v. Columbia Lakes Homeowner's Ass'n*, 325 S.W.3d 791, 798 (Tex.App.—Houston [14th Dist.] 2010, no pet.); *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998); *Uptegraph v. Sandalwood Civic Club*, 312 S.W.3d 918, 925 (Tex.App.—Houston [1st Dist.] 2010, no pet.).

As Appellees seek interpretation and a declaration of their rights under a contract with their co-owner – the City - rather than interpretation of a statute or ordinance, there is no waiver of immunity for any claim against the City under the UDJA. See, *Mustang* at 316; See also *City of Dallas v. Turley*, 316 S.W.3d 762, 768-69 (Tex.App.—Dallas 2010, pet. denied) (landowners who sought clarification of their rights but who did not challenge the validity of an ordinance or statute failed to establish waiver of immunity).

At bottom, Appellees' declaratory judgment action is as barred by governmental immunity as their common law and breach of contract claims and the claim should have been dismissed for lack of jurisdiction. This Court should reverse and render dismissal in favor of Appellants.

## VI. Appellees assertion of "ultra vires" does not present a viable claim which overcomes governmental immunity

For the first time in their First Amended Petition, and again with th benefit of the City's briefing which demonstrated the baseless nature of their prior claims, Appellees asserted a bald allegation that the Mayor's actions in executing the Declaration of Amended Deed Restrictions after a City Council vote were *ultra*

*vires* [C.R. 110]. This assertion is not only as unavailing as Appellees' other claims, it suggests Appellees misunderstand this legal concept.

The *ultra vires* exception to immunity for a legislative act encompasses suits to require state officials to comply with statutory or constitutional provisions. These suits attempt to "reassert the control of the State." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009). Notably, regardless of whether an individual's immunity may be affected by a *proper assertion* of a claim of an individual's alleged *ultra vires* act, **a governmental entity is immune from an ultra vires claim**. See, e.g., *De Los Santos v. City of Robstown*, 2012 WL 6706780 (Tex.App. – Corpus Christi, no pet.), citing, *Heinrich*, at 372. *Patel v. Texas Dept. of Licensing and Regulation*, ___ S.W.3d ___, 2015 WL3982687 at *4 (Tex. 2015). The *ultra vires* exception only applies to official capacity claims brought against governmental officials who have failed to comply with ministerial statutory or constitutional duties. *Town of Flower Mound v. Rembert Enterprises, Inc.*, 369 S.W.3d 465, 476 (Tex. App.—Fort Worth 2012, pet. denied).

Appellees' assertion that the Mayor had no authority to sign the Declaration was, and is, contrary to law. The City of Friendswood, Texas' Charter, Article III, Section 3.05 sets out the Mayor's duties and authority. It provides in part as follows:

> The Mayor shall see that all resolutions of the City Council are faithfully obeyed and enforced. He/she shall, when authorized by the

24

> City council, sign all official documents, such as ordinances, resolutions, conveyances, grant agreements, official plats, contracts and bonds…H/she shall perform such other duties consistent with this Charter or as may be authorized or directed by City Council.

FRIENDSWOOD, TEXAS CHARTER § 3.05 [C.R. 143]. Further, "[t]o fall within [the] *ultra vires* exception, a suit must not complain of a government officer's exercise of discretion, but rather must allege and ultimately prove that the officer acted without legal authority or failed to perform a purely ministerial act." *Berry v. Tex. Dem. Party*, 449 S.W.3d 633, 643-44 (Tex.App.—Austin 2014, no pet. hist.). *Patel* at *4. "'Complaints that the official 'reached an incorrect or wrong result when exercising its delegated authority' is not sufficient to state an *ultra vires* claim of exceeding statutory authority." *Moers v. Harris County Appraisal District*, ___ S.W.3d ___, 2015WL3981735 (Tex. App.—Houston [1st Dist.] 2015, no pet. hist.). Moreover, the official capacity *ultra vires* exception is quite limited and does *not* apply in an action to "establish a contract's validity, to enforce performance under a contract, or to impose contractual liabilities." See, *Town of Flower Mound* at 476.

Appellees did not premise their claim on any alleged non-performance of any identified statutory or constitutional ministerial duties by Appellant Holland and executing legal documents, including those decided by the City Council, on behalf of the City is hardly outside this mayor's authority and, therefore, not, as a simple matter of clear law, an *ultra vires* act. While Appellees claimed in their

Second Amended Petition that Mayor Holland took action without notice or a vote, that assertion was directly disproven by the evidence filed by Appellants, including the agenda and minutes [C.R. 116-130; 138-142]. Indeed, when the City filed documentation confirming the agenda and minutes relating to the City's contested action, Appellees not only failed to controvert it, they told the trial court they conceded the point.

## VII. Appellees have no viable claim and have not established jurisdiction under the Texas Open Meetings Act

Appellees further sought a declaratory judgment that Appellants' actions were in violation of the Texas Open Meetings Act premised, again, on the contention – demonstrated false by the City's public records [C.R. 116-130; 138-142]- that there was no notice or discussion of the actions reflected in the Declaration of Amended Deed Restrictions.

The Texas Open Meetings Act prescribes notice and disclosure requirements for governmental meetings. See, *City of San Antonio v. Fourth Court of Appeals*, 820 S.W.2d 762 (1991). Appellees' claim is asserted "pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code," the Texas Declaratory Judgments Act [C.R. 172]. As set forth above, governmental immunity is not waived under the Declaratory Judgments Act except in very limited circumstances, which do not include an alleged violation of the Open Meetings Act. See, *Mustang Special Utility District.* Rather, the Act's enforcement mechanism is set forth in the Act

26

itself.[11] Appellees request for declaratory relief related to the Texas Open Meetings Act is barred by immunity because it is not within the narrow exceptions to immunity under the Declaratory Judgments Act. See, e.g., *Heinrich*.

After Appellees asserted an Open Meetings Act claim, however bare, Appellants affirmatively disproved it by supplying the July 2013 City Council Minutes [C.R. 128] and, thereafter, the Agenda timely posted in advance of that meeting [C.R. 139, No. 14]. After the City produced these, Appellees conceded there was no violation of the Texas Open Meetings Act, but neither the Appellees nor the Court dismissed the claim. The trial court erred in failing to grant Appellants' plea to the jurisdiction on the Texas Open Meeting Act claim.

## VIII. Appellees' claims against Mayor Holland are barred by derivative and official immunity

Appellees' have not alleged any act by Mayor Holland other than executing the Declaration of Amended Deed Restrictions as Mayor. Along with its Answer, the Appellant City of Friendswood moved the Court to dismiss all claims against Mayor Holland, based on his derivative immunity under Texas Tort Claims Act § 101.106(e). See also, *Mission Consol. ISD v. Garcia*, 253 S.W.3d 653, 657 (Tex. 2008). Specifically, TTCA § 101.106(e) provides that "[i]f a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental

---

[11] See, Texas Government Code § 551.142(b).

unit." *Hopkins v. Strickland*, 2013 WL 1183302 (Tex.App.—Houston [1ˢᵗ Dist.] 2013) (unpublished) (affirming dismissal of claims against mayor for defamation and malicious prosecution, under § 101.106).  The trial court erred in denying the request to dismiss claims against Appellant Holland.

In addition, the *ultra vires* claim against Holland, necessarily against him in his official capacity only, must be dismissed because it fails to overcome the governmental immunity which applies, as discussed above.

Finally, official immunity bars any claim against Holland based upon the pleadings and uncontroverted evidence before the Court.  Common law official immunity protects public officials from suit arising from performance of their (1) discretionary duties (2) performed in good faith; and (3) within the scope of their authority.  *Ballantyne v. Champion Builders, Inc.* 144 S.W.3d 417, 423 (Tex. 2004).  "An action is considered discretionary if it involves personal deliberation, decision, and judgment."  *City of Lancaster v. Chambers*, 883 S.W.2d 650, 654 (Tex. 1994).  To determine good faith, courts apply an objective standard, "what a reasonable [person] could have believed."  *Ballantyne*, 144 S.W.3d at 426.  Specifically whether a reasonable person, possessing the same information he had at the time, could have believed his conduct was lawful.  *Chambers*, at 656.  An act is within the scope of an official's authority if they are discharging the duties generally assigned to them.  *Ballantyne*, at 424.

The pleadings and evidence demonstrate Mayor Holland acted within the scope of his authority, in his discretionary capacity, and in good faith [C.R. 128, 139 ¶ 13, 143]. While the Mayor did absolutely nothing which would give rise to a legal claim against him, even if he did, § 101.106(e) and official immunity protect him from suit and deprived the trial court of jurisdiction. The trial court erred in denying Mayor Holland's motion to dismiss and plea to the jurisdiction on claims asserted against him.

## IX.  Appellees Claim for Injunctive Relief is Barred

Appellees included in their Petition a request for an injunction against any development by the City of its lots. To be entitled to injunctive relief, a party must show a probable right to relief and success on the merits, imminent harm, and an irreparable injury with no remedy at law. See, *Butnaru v. Ford Motor Company*, 84 S.W.3d 198, 204 (Tex. 2002); *Sharma v. Vinmar Int'l Ltd*., 231 S.W.3d 405, 419 (Tex.App.—Houston [14th Dist.] 2007, no pet.). The Court appropriately denied Appellees request for a Temporary Restraining Order [C.R. 21]. Injunctive relief is appropriate in narrow circumstances under the *ultra vires* exception, discussed above. See, *Heinrich*, supra. Appellees failed to identify any waiver from a claim for injunctive relief here. Thus, the Appellees' immunity barring any claim extends to any request for injunctive relief. The Court should reverse the denial of Appellants' plea and render dismissal in favor of Appellants.

**X.   District Court erred in failing to dismiss all of Appellees' claims or, alternatively, individual claims**

Any one of these grounds constituted a basis for dismissal in light of the lack of jurisdiction the District Court had over this case. The Court erred by denying the City's plea to the jurisdiction on Appellee's Counterclaim.

## CONCLUSION

Appellees have asserted numerous causes of action in an obvious and ever-expanding attempt to thwart dismissal of claims from which both the City and Mayor clearly are immune. While the claims themselves wholly lack merit, they are barred by the direct application of immunity, or by Appellees' failure to state viable claims which would overcome that immunity. Appellees failed to show as waiver of immunity on any of their claims and no waiver exists. Accordingly, the trial court lacks jurisdiction and should have granted the plea to the jurisdiction and motion to dismiss, in whole or at least in part. This Court should reverse and render judgment in favor of both the City and Mayor Holland and dismissing all of Appellees' claims with prejudice.

## PRAYER

Appellants, the City of Friendswood, Texas and Kevin Holland pray this Court reverse the trial court's denial of its Plea to the Jurisdiction and Motion to Dismiss, and render judgment that Appellees' suit be dismissed with prejudice for lack of subject matter jurisdiction and for all other relief to which they are entitled.

30

Respectfully submitted,

/s/ *William S. Helfand*
William S. Helfand
Attorney-in-Charge
SBOT No. 09388250
bill.helfand@chamberlainlaw.com
Charles T. Jeremiah
SBOT No. 00784338
Charles.jeremiah@chamberlainlaw.com
ATTORNEYS FOR APPELLANTS

OF COUNSEL:

CHAMBERLAIN, HRDLICKA, WHITE,
    WILLIAMS & AUGHTRY
1200 Smith Street, Suite 1400
Houston, Texas 77002-4401
(713) 654-9630
(713) 658-2553 (Fax)

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of Appellant's Brief has been served via CM/ECF System and/or by CD and certified mail, return receipt requested, on this 15th day of July, 2015 to:

Aaron Pool
James T. Sunosky
Donato Minx Brown & Pool, PC
3200 Southwest Freeway, Suite 2300
Houston, Texas 77027

/s/*William S. Helfand*

1947904.2
003856..000356

**CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the typeface and word-count requirements set forth in the Texas Rules of Appellate Procedure. This brief has been prepared, using Microsoft Word, in 14-point Times New Roman font for the text and 12-point Times New Roman font for any footnotes. This Motion contains 7,146 words, as determined by the word count feature of the word processing program used to prepare this document, excluding those portions of the notice exempted by TEX. R. APP. P. 9.4(i)(1).

/s/ *William S. Helfand*

# APPENDIX

# TAB A

14-CV-0490
DCORDPJ
Order Denying Plea to Jurisdiction
1092332

NO. 14-CV-0490

| | | |
|---|---|---|
| PAUL and CAROLYN HORN, MIKE and LUCY STACY, PETE and JUDY GARCIA, and JANICE FRANKIE | § § § § | IN THE DISTRICT COURT OF |
| VS. | § § § | GALVESTON COUNTY, TEXAS |
| THE CITY OF FRIENDSWOOD AND MAYOR KEVIN M. HOLLAND | § § | 212th JUDICIAL DISTRICT |

15 MAY -5 AM 10: 50

DISTRICT CLERK
GALVESTON COUNTY, TEXAS

## ORDER DENYING DEFENDANT'S PLEA TO THE JURISDICTION AND MOTION TO DISMISS

BE IT REMEMBERED, on this day came on to be heard Defendants' Plea to the Jurisdiction and Motion to Dismiss in the above cause, and the Court having considered same, with the arguments of counsel, finds that said Motion shall in all things be DENIED. It is therefore accordingly,

ORDERED, ADJUDGED and DECREE, Defendants' Plea to the Jurisdiction and Motion to Dismiss shall in all things be DENIED. It is further,

ORDERED, ADJUDGED and DECREED, Defendant's Motion to Strike Discovery or Alternatively Stay Discovery shall in all things be DENIED.

SIGNED this the 30 day of april , 2015

PRESIDING JUDGE

12

193

# TAB B

this subsection will have on the availability of other forms of assistance under this Act.

(6) Definitions - For purposes of this section

(A) Department of Defense - The term "Department of Defense" has the meaning the term "department" has under section 101 of title 10.

(B) Emergency work - The term "emergency work" includes clearance and removal of debris and wreckage and temporary restoration of essential public facilities and services.

## Sec. 404. Hazard Mitigation (42 U.S.C. 5170c)\*

(a) In General - The President may contribute up to 75 percent of the cost of hazard mitigation measures which the President has determined are cost-effective and which substantially reduce the risk of future damage, hardship, loss, or suffering in any area affected by a major disaster. Such measures shall be identified following the evaluation of natural hazards under section 5165 of this title and shall be subject to approval by the President. Subject to section 5165 of this title , the total of contributions under this section for a major disaster shall not exceed 15 percent for amounts not more than $2,000,000,000, 10 percent for amounts of more than $2,000,000,000 and not more than $10,000,000,000, and 7.5 percent on amounts of more than $10,000,000,000 and not more than $35,333,000,000 of the estimated aggregate amount of grants to be made (less any associated administrative costs) under this Act with respect to the major disaster.

(b) Property acquisition and relocation assistance -

(1) General authority - In providing hazard mitigation assistance under this section in connection with flooding, the Director of the Federal Emergency Management Agency may provide property acquisition and relocation assistance for projects that meet the requirements of paragraph (2).

(2) Terms and conditions - An acquisition or relocation project shall be eligible to receive assistance pursuant to paragraph (1) only if -

(A) the applicant for the assistance is otherwise eligible to receive assistance under the hazard mitigation grant program established under subsection (a); and

(B) on or after December 3, 1993, the applicant for the assistance enters into an agreement with the Director that provides assurances that -

(i) any property acquired, accepted, or from which a structure will be removed pursuant to the project will be dedicated and maintained in perpetuity for a use that is compatible with open space, recreational, or wetlands management practices;

29

(ii) no new structure will be erected on property acquired, accepted or from which a structure was removed under the acquisition or relocation program other than--
  (I) a public facility that is open on all sides and functionally related to a designated open space;
  (II) a rest room; or
  (III) a structure that the Director approves in writing before the commencement of the construction of the structure; and
(iii) after receipt of the assistance, with respect to any property acquired, accepted or from which a structure was removed under the acquisition or relocation program--
  (I) no subsequent application for additional disaster assistance for any purpose will be made by the recipient to any Federal entity; and
  (II) no assistance referred to in subclause (I) will be provided to the applicant by any Federal source.

(3) Statutory construction - Nothing in this subsection is intended to alter or otherwise affect an agreement for an acquisition or relocation project carried out pursuant to this section that was in effect on the day before December 3, 1993.

(c) Program Administration by States -

(1) In general - A State desiring to administer the hazard mitigation grant program established by this section with respect to hazard mitigation assistance in the State may submit to the President an application for the delegation of the authority to administer the program.

(2) Criteria - The President, in consultation and coordination with States and local governments, shall establish criteria for the approval of applications submitted under paragraph (1). The criteria shall include, at a minimum -

  (A) the demonstrated ability of the State to manage the grant program under this section;
  (B) there being in effect an approved mitigation plan under section 5165 of this title; and
  (C) a demonstrated commitment to mitigation activities.

(3) Approval - The President shall approve an application submitted under paragraph (1) that meets the criteria established under paragraph (2).

(4) Withdrawal of approval - If, after approving an application of a State submitted under paragraph (1), the President determines that the State is not administering the hazard mitigation grant program established by this

section in a manner satisfactory to the President, the President shall withdraw the approval.

(5) Audits - The President shall provide for periodic audits of the hazard mitigation grant programs administered by States under this subsection.

## Sec. 405. Federal Facilities (42 U.S.C. 5171)

(a) Repair, reconstruction, restoration or replacement of United States facilities - The President may authorize any Federal agency to repair, reconstruct, restore, or replace any facility owned by the United States and under the jurisdiction of such agency which is damaged or destroyed by any major disaster if he determines that such repair, reconstruction, restoration, or replacement is of such importance and urgency that it cannot reasonably be deferred pending the enactment of specific authorizing legislation or the making of an appropriation for such purposes, or the obtaining of congressional committee approval.

(b) Availability of funds appropriated to agency for repair, reconstruction, restoration, or replacement of agency facilities - In order to carry out the provisions of this section, such repair, reconstruction, restoration, or replacement may be begun notwithstanding a lack or an insufficiency of funds appropriated for such purpose, where such lack or insufficiency can be remedied by the transfer, in accordance with law, of funds appropriated to that agency for another purpose.

(c) Steps for mitigation of hazards - In implementing this section, Federal agencies shall evaluate the natural hazards to which these facilities are exposed and shall take appropriate action to mitigate such hazards, including safe land-use and construction practices, in accordance with standards prescribed by the President.

## Sec. 406. Repair, Restoration, and Replacement of Damaged Facilities (42 U.S.C. 5172)*

(a) Contributions -

(1) In general -The President may make contributions -

(A) to a State or local government for the repair, restoration, reconstruction, or replacement of a public facility damaged or destroyed by a major disaster and for associated expenses incurred by the government; and

(B) subject to paragraph (3), to a person that owns or operates a private nonprofit facility damaged or destroyed by a major disaster for the repair, restoration, reconstruction, or replacement of the facility and for associated expenses incurred by the person.